Alicja JADESZKO

v.

Peter BRENNAN, Secretary of Labor.

Civ. A. No. 75–2054.

United States District Court,
E. D. Pennsylvania.

July 13, 1976.

John G. McDougall, Philadelphia, Pa., for plaintiff.

Marshall H. Harris, Regional Solicitor, U. S. Dept. of Labor, Joseph R. Ritchie, Jr., U. S. Dept. of Labor, Michael B. L. Hepps, Asst. U. S. Atty., Philadelphia, Pa., for respondent.

## OPINION

DITTER, District Judge.

This case is before me on defendant's motion to dismiss or in the alternative, for summary judgment. The issues raised are whether or not this court has jurisdiction to review a decision of the Secretary of Labor which denied a labor certification to an alien and, if so, whether the Secretary acted arbitrarily or capriciously. For the reasons stated herein, I find that this court does have jurisdiction to review the decision, that the Secretary abused the discretion vested in him, and that the matter should be remanded to the Secretary for further consideration.

Plaintiff, Alicja Jadeszko, is a twenty-three year old citizen and native of Poland. She entered this country under a temporary visitor's visa on January 3, 1972. Since February, 1975, she has been employed as a live-in maid for Mr. and Mrs. Jerome Matez, who have three children, and reside in Jenkintown, Pennsylvania, a Philadelphia suburb. On March 11, 1975, the Department of Labor received plaintiff's application for a labor certification as a "live-in domestic."[1] This application was filed on plaintiff's behalf by her employers, who stated they had checked with private agencies and the State Employment Service but could not find a qualified United States worker. A description of plaintiff's job showed that it involved a 40-hour work week to be performed between 8:00 and 11:20 A.M. and 4:00 and 7:20 P.M., six days a week, for which plaintiff is paid $2.50 per hour. Plaintiff's duties include "general household cleaning such as dusting, vacuuming, washing clothes, cooking and serving meals, and taking care of the children." The certifying officer[2] determined that there was no showing that Mr. and Mrs. Matez needed a live-in maid, decided the job in their home could be filled by a qualified applicant willing and able to do day's work on a live-out basis, found there were 366 such workers registered for employment assistance in the Philadelphia area, and concluded the employment of plaintiff would have an adverse effect on wages or working conditions of U.S. workers.[3] When this decision was

---

1. A labor certification is required of all aliens who desire to enter or permanently remain in the United States for the purpose of employment. See Section 212(a)(14) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(14).

2. Procedurally, an alien in plaintiff's category of employment (see 29 C.F.R. § 60.3) files her application, through her employer, with the local office of State Employment Security Service. The application is then forwarded to the Regional Manpower Administrative Office of the Department of Labor. Upon receipt, the case is referred to a certifying officer, appointed by the Assistant Regional Director for Manpower, for determination (29 C.F.R. § 60.4).

3. Another reason was also given for the denial of plaintiff's application: Mr. and Mrs. Matez's income was insufficient to warrant the employment of a maid and thus the job offer was not

affirmed on behalf of the Secretary of Labor by his designated administrative officer, plaintiff filed her complaint seeking a declaratory judgment that the Secretary's action was invalid and that the application should be approved.

■ The court's initial finding must be whether it has jurisdiction to review a determination relegated to the Secretary of Labor. The defendant urges that it does not, asserting two grounds: that there is no proper statutory basis for jurisdiction alleged [4] and that there is no act of Congress waiving sovereign immunity to suits challenging the denial of alien certification. Defendant admits, however, that a number of courts have held to the contrary. For the reasons set forth in *Rusk v. Cort*, 369 U.S. 367, 379–80, 82 S.Ct. 787, 794, 7 L.Ed.2d 809 (1962), *Davis v. Romney*, 490 F.2d 1360, 1364–65 (3d Cir. 1974), *Pesikoff v. Secretary of Labor*, 163 U.S.App.D.C. 197, 501 F.2d 757, 765–66, cert. denied 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974), and *Golabeck v. Regional Manpower Administration*, 329 F.Supp. 892, 894 (E.D. Pa.1971), I conclude that this court does have jurisdiction to review the Secretary's findings.

■ Once a court assumes jurisdiction, its scope of review is limited to determining whether the Secretary's denial of the alien employment certification was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.

§ 706(2)(A); *Seo v. U. S. Department of Labor*, 523 F.2d 10, 12 (9th Cir. 1975); *Golabeck*, supra, 329 F.Supp. at 894. Here, a decision as to the presence or absence of an abuse of discretion in the Secretary's decision involves a determination of all the relevant factors and whether there has been a clear error of judgment. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). Nevertheless, the ultimate standard of review is a narrow one and a district court may not substitute its judgment for that of the agency.

Section 212(a)(14) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(14), creates a presumption that aliens should not be permitted to enter the United States for the purpose of performing labor because of the possible harmful impact which they may have on American workers. The statute specifically bars such aliens unless the Secretary of Labor concludes there are not sufficient workers in the United States who are able, willing, qualified, and available for the job in question and that the employment of the alien will not adversely affect the wages and working conditions of United States workers. Of course this requires the Secretary to ascertain the status of the labor market for the specific occupation at the time and at the place in question. Complexities obviously may abound, but here the Secretary streamlined the task with which he was confronted by the simple expedient of declaring that Mr. and Mrs. Ma-

valid. The Secretary concedes this factor is not to be considered under the statutory standards here applicable.

4. Plaintiff's Complaint for Declaratory Judgment was bottomed on 28 U.S.C. § 2201 and 28 U.S.C. § 1346, both of which defendant claims are inapplicable. Section 2201, the Declaratory Judgment Statute, has been held to be "limited in operation to those cases which would otherwise be within the jurisdiction of federal courts; the mere fact that a declaratory judgment is being sought is not, of itself, ground for federal jurisdiction." *Ragoni v. United States*, 424 F.2d 261, 264 (3d Cir. 1970). In addition, Section 1346 "does not give consent to suits where only declaratory or other equitable relief is sought. It applies only to suits for recovery of money damages." [citations omitted].

*Wells v. United States*, 280 F.2d 275, 277 (9th Cir. 1960). Therefore, defendant states, this results in a failure to set forth statutory authority conferring jurisdiction and warrants dismissal. Subsequent to defendant's motions, plaintiff sought to amend her jurisdictional allegations through her memorandum in opposition to defendant's motion and an accompanying motion to amend, advancing 5 U.S.C. § 704 (Administrative Procedures Act) and 8 U.S.C. § 1182(a)(14) as her jurisdictional bases. For the reasons to be expressed hereafter, these sections do present proper authority and I will grant plaintiff's request to amend under the liberal construction to be afforded Rule 15(a) of the Federal Rules of Civil Procedure. Defendant's motion to dismiss on this ground must be denied accordingly.

tez did not need domestic help during the hours they thought they did and that they could get along just as well with a day worker as they could with a live-in maid.[5]

This is Washingtonian whimsy.

While I recognize that the Secretary has been given wide discretionary power, Congress has not given him the authority to say that one who wants to employ a baker in the morning must be content with a candle stick maker who is willing to work in the afternoon. *Silva v. Secretary of Labor,* 518 F.2d 301, 308 (1 Cir. 1975), held that the Secretary had no right to treat as irrelevant the job requirements stated by an employer,[6] and that in view of the "marked advantages and convenience" of a live-in domestic to an employer, it "borders on the absurd" to say that a day worker is just as satisfactory. I do not know why Mr. and Mrs. Matez want a domestic who will be available at the breakfast and dinner hours but will not be needed during the noonday but all sorts of reasons suggest themselves. I do not know precisely why live-in help is so much more suited to their needs than would a day worker be that they are willing to provide meals, a private bedroom, and adequate bathroom and toilet facilities, but this is what the record shows they have undertaken to do. They should be given a chance

to establish their requirements—not just told they do not exist.[7] Regretfully, this was not the only error the Secretary made.

Having decided that a day worker would be sufficient for the needs of Mr. and Mrs. Matez, the Secretary then found "Local employment service offices in the Philadelphia Metropolitan Statistical Area have 366 similarly qualified applicants registered for employment assistance to perform the duties described on a live-out basis." This led to the conclusion that "there were similarly qualified maids available for the position" and thus that Miss Jadeszko could not be admitted.[8]

If there are 366 able, willing, and qualified workers to fill the job at the Matez home, the Secretary is obviously correct in refusing to admit an alien for this position. However, the number, 366, is fantasy not fact. According to defendant's brief, the figures come from the following job banks:

| | |
|---|---|
| Coatesville | – 3 maid general |
| Hatboro | – 1 day worker, 3 maid general |
| Lansdale | – 1 day worker, 3 maid general |
| Levittown | – 19 day workers, 3 maid general |
| Philadelphia | – 263 day workers, 36 maid general |
| Pottstown | – 2 maid general |

Interesting as the number of unemployed maid and day workers in the Philadelphia

---

5. This is what the Secretary said:
   "The duties and responsibilities described for the job are essentially the same as those customarily performed by United States workers on a live-out basis. However, the split shift from 8 to 11:20 a. m. and 4 to 7:20 p. m. impedes effective recruitment of these workers. We recognize that the hours of work in most occupations are subject to variation. For purposes of alien employment, however, we must evaluate the duties of the job offer in terms of the hours customarily worked and available manpower to fill the position."

6. This point was made as part of a critical comment about *Pesikoff v. Secretary of Labor,* 163 U.S.App.D.C. 197, 501 F.2d 757, cert. denied 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed. 315 (1974), which held proper the Secretary's disregarding as irrelevant an employer's requirements for live-in help as a mere "personal preference." The Fifth Circuit called this an "Orwellian designation" and said that to use "denigrating language to transform an employer's reasonable requirements into something less seems to us unfair." *Silva v. Secretary of*

*Labor,* 518 F.2d 301, 309 (5th Cir. 1975). See also the strong dissent of Judge McKinnon in *Pesikoff.*

7. At present, no such opportunity is afforded petitioner's employers under the Immigration and Nationality Act nor does the Act provide for any review of certification decisions.
   I join in the recommendation advanced by the Fifth Circuit in *Silva,* supra, 518 F.2d at 311, that much of the confusion in this area could be avoided if the Secretary were to promulgate coherent policies regarding the awarding of labor certifications to aliens to be hired as domestics, whether they be live-in or day workers.

8. Although plaintiff is physically present in the United States, having entered on a temporary visa, since she is trying to changer her status, she is treated as one seeking admittance. *Campos v. United States Immigration and Naturalization Service,* 402 F.2d 758, 760 (9th Cir. 1968).

area may be as a raw statistic, these registration figures are completely misleading in this case. The Matez family lives in Jenkintown. Coatesville is almost 50 miles away, and Pottstown about 30. Of course, the greater number of available workers are from Philadelphia and Jenkintown is approximately 20 minutes by public transportation, the Reading branch of ConRail, from center-city. But that is of doubtful importance for there is nothing to show how close to a ConRail-Reading station any of the 299 workers from Philadelphia live. This city has approximately 130 square miles; from the International Airport in South Philadelphia to the Poquessing Creek on the northeastern border, is about 20 miles. Just how many of the 299 persons in the Philadelphia job bank live near public transportation lines—or have their own transportation—I do not know, and if the Secretary knows, he has not said. The point is that his number, 366 available workers, is pure bureaucratic prestidigitation. "Many courts have recently dealt with the Secretary's decision-making process in applications for alien employment certification. In almost every case, the court held that blind reliance on state agency employment listings is an abuse of discretion. For these listings to be an adequate factual basis for a finding that there are no 'able, willing, qualified, and available' American workers, they must be credible, reliable and pertinent." *Seo v. U. S. Department of Labor*, 523 F.2d 10, 13 (9th Cir. 1975), and cases cited therein.

There has been no such showing in this case.

■ I conclude that the Secretary has abused his discretion in three ways: first, by deciding that a live-in maid was the equivalent of day help; second, by determining that the Matez family, which wanted a maid until 7:20 P.M., could only have one until 5:00 P.M. and third, by his unswerving faith in job bank registration numbers to show that American workers were available.

I am remanding this matter to the Secretary. Plaintiff should be given an opportunity to show why Mr. and Mrs. Matez want a live-in maid rather than a domestic and why her services are desired during the stated hours. The Secretary should then determine the reasonableness of the job requirements and establish whether there are qualified residents who wish to take such a job in Jenkintown.