**UNIROYAL, INC., Plaintiff-Appellant,**

v.

**F. Ray MARSHALL, Secretary of the Department of Labor, and Weldon J. Rougeau, Deputy Assistant Secretary and Director of the Office of Federal Contract Compliance Programs, and Cecil D. Andrus, Secretary of the Department of the Interior, Defendants-Appellees.**

**No. 77-1970.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 22, 1978.

Decided July 5, 1978.

---

Harry N. Turk, New York City, for plaintiff-appellant.

Deborah M. Seymour, Atty. of Civ. Rights Div., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before PELL and BAUER, Circuit Judges, and MARSHALL, District Judge.*

MARSHALL, District Judge.

In this appeal, we are asked to decide whether Executive Order 11246, which prohibits discriminatory employment practices by all government contractors, grants sufficient rulemaking authority to the Department of Labor to permit the use of prehearing discovery techniques and administrative subpoenas in administrative enforcement proceedings. Appellant Uniroyal, Inc., brought this collateral pre-enforcement action in the district court challenging these procedures. The district court denied Uniroyal's motion for a preliminary injunction and granted summary judgment for the government. We affirm upon the limited ground that plaintiffs' action was premature because of the "long settled rule of judicial administration that no one is enti-

---

* The Honorable Prentice H. Marshall, United States District Judge, is sitting by designation.

tled to judicial relief, for a supposed or threatened injury, until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Corp.*, 303 U.S. 41, 51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938); *Frey v. C.E.A.*, 547 F.2d 46 (7th Cir. 1976).

Uniroyal, Inc., a manufacturer of chemical, rubber and plastic products, holds numerous contracts with the federal government. All government contractors are required by Executive Order 11246 (the Order) to include in each contract a clause which obligates them to take affirmative action to ensure that employees are treated without regard to race, color, sex, religion or national origin. See 41 C.F.R. § 60–1.4. The Order is administered by the Secretary of the Department of Labor (the Secretary), who is authorized to issue implementing rules and regulations. Under these regulations, the Secretary has delegated his enforcement responsibilities to the Office of Federal Contract Compliance Programs (OFCCP). 41 C.F.R. § 60–1.2.

Specific responsibility for monitoring a contractor's compliance with the Order is entrusted to a compliance agency, which conducts periodic reviews to determine whether the contractor is adhering to the terms of the equal opportunity clause in his contract. 41 C.F.R. § 60–1.3 and § 60–1.20. In the case of Uniroyal, the compliance agency is the Department of the Interior (Interior). In January, 1976 Interior conducted an on-site review of Uniroyal's Mishawaka, Indiana plant and found a number of deficiencies in its adherence to the terms of its contract. These included the failure to supply complete and accurate data to Interior investigators, the failure to identify areas in the work force where women and minorities were underrepresented, the failure to set goals and timetables for an affirmative action program, and the assignment of women and minorities to lower-paying jobs than those held by male and white employees of comparable qualifications and seniority. Interior gave Uniroyal thirty days to show cause why contract termination and debarment proceedings should not be initiated.

Over the next several months, repeated attempts were made to reach a negotiated settlement of the dispute. Those efforts proved unproductive, and in July, 1976 the Director of OFCCP issued a formal complaint which commenced the administrative enforcement proceeding. Uniroyal denied the charges of non-compliance with the Order, and the case was set for a hearing before an administrative law judge.

Formal pre-hearing discovery began in November, 1976, when the government filed interrogatories and requests for production of documents. The implementing regulations, which were promulgated in 1972 and 1977, authorize an array of pre-hearing discovery devices, including interrogatories, requests for admissions, requests to produce documents, requests to enter and inspect property, and depositions on oral examination. 41 C.F.R. § 60–30.9 through § 60–30.11. Over the next eight months, the government filed about fifteen discovery requests, including deposition notices directed to six Uniroyal officials. Uniroyal filed two discovery requests of its own during this period.

While the government has responded to Uniroyal's discovery requests, Uniroyal in turn has been largely uncooperative and dilatory. By securing several extensions of time, it delayed its response to the government's requests for more than three months. When it did respond, Uniroyal refused to supply large blocks of information, contending that the requested information was irrelevant, confidential, beyond the scope of the proceeding, or physically unavailable. The government subsequently procured several orders from the administrative law judge compelling Uniroyal to provide more complete answers. Uniroyal was still unwilling to accommodate, and on May 10, 1977 it raised for the first time the contention that the Secretary of Labor lacked authority to issue the pre-hearing discovery rules. It asked the administrative law judge to bar discovery and vacate the prior orders. In turn, the government moved for an order terminating Uniroyal's present contracts and declaring Uniroyal

ineligible for future contracts due to its failure to engage in discovery.

The administrative law judge denied Uniroyal's motions to preclude discovery, stating that an administrative proceeding was not the proper forum to test the validity of the rules. Uniroyal has appealed this interlocutory ruling to the Secretary of Labor, and that appeal is still pending. The judge also enlarged the scope of a hearing scheduled for June 28, 1977 to consider evidence on whether Uniroyal's refusal to engage in pre-hearing discovery and its defiance of the judge's discovery orders constituted a violation of Executive Order 11246 and grounds for imposing sanctions, including contract termination. Finally, the judge ruled that unless the company answered outstanding requests to admit and interrogatories prior to the upcoming hearing, those requests would be deemed admitted.

One week before the scheduled June 28 hearing, Uniroyal filed its instant complaint in the district court against three government officials charged with administering the Order,[1] seeking to bar enforcement of the OFCCP's pre-hearing discovery rules. The challenged rules are published at 41 C.F.R. § 60-30.1 (last sentence), which provides that the Federal Rules of Civil Procedure shall control in the absence of a specific provision, § 60-30.9 through § 60-30.11, which authorize pre-hearing discovery, and § 60-30.17, which authorizes the issuance of administrative subpoenas to compel the attendance of witnesses and the production of documents at hearings. In its complaint, Uniroyal asserted that the rules were invalid because they were not expressly authorized by the Administrative Procedure Act, 5 U.S.C. § 701 et seq., by Executive Order 11246, or by its statutory fountainhead, the

Federal Property and Administrative Services Act of 1949, 40 U.S.C. § 486. Uniroyal also claimed that the government's efforts to terminate its contracts for non-compliance with the rules deprived it of property rights protected by the due process clause of the Fifth Amendment. In its prayer for relief, Uniroyal sought to enjoin the defendants from holding the scheduled administrative hearing and from imposing any sanctions for Uniroyal's non-compliance with pretrial discovery requests. It also sought a declaration that the discovery rules were an impermissible and unconstitutional exercise of defendants' authority.

The district court entered an *ex parte* temporary restraining order on June 22, resulting in the cancellation of the June 28 administrative hearing. However, that order was subsequently dissolved, and on August 15 the district court denied plaintiff's motion for a preliminary injunction and entered summary judgment in favor of the defendants.[2] The court rested its ruling on several grounds. First, Uniroyal failed to show that it would suffer irreparable injury if a preliminary injunction were denied, since it was in no danger of losing government contracts prior to the completion of the scheduled administrative hearing. Second, Uniroyal had failed to exhaust the administrative procedures specified in its contracts with the government, because the issue of discovery sanctions was still pending before the administrative law judge. Third, the case met none of the requirements for pre-enforcement review of agency action, and therefore was not ripe for judicial decision. Finally, the regulations were valid, since they were lawful contract terms and were not in conflict with or in excess of their underlying authority.

1. Those officials are F. Ray Marshall, Secretary of the Department of Labor, Weldon J. Rougeau, Director of OFCCP, and Cecil D. Andrus, Secretary of the Department of the Interior.

2. Following the dismissal of Uniroyal's court action, the administrative hearing was rescheduled and eventually took place in November, 1977. Evidence was presented on the issue of sanctions for Uniroyal's refusal to engage in pre-hearing discovery. On June 14, 1978 we were advised by Uniroyal that on April 11, 1978 the administrative law judge issued a Recommended Decision recommending to the Secretary that Uniroyal's present contract be cancelled and that Uniroyal be declared ineligible for future government contracts due to its refusal to comply with the government's discovery requests and the administrative law judge's orders in respect thereto. The Recommended Decision is now pending before the Secretary on review.

On October 17, 1977 this court denied Uniroyal's motion for an injunction pending appeal in which it sought an order restraining defendants from proceeding with any administrative hearings until we ruled on Uniroyal's appeal.

On appeal, Uniroyal challenges each of the reasons offered by the district court. Because we agree with the district court that Uniroyal is precluded from maintaining its action because of its failure to exhaust an available administrative remedy, we affirm without reaching the merits of the validity of the rules.

■ The exhaustion doctrine is intended to defer judicial review until controversies have been channeled through the complete administrative process. The exhaustion requirement serves to avoid collateral, dilatory action of the likes of the instant action and to ensure the efficient, uninterrupted progression of administrative proceedings and the effective application of judicial review. It provides an agency with an opportunity "to correct its own errors, to afford the parties and the courts the benefit of [the agency's] experience and expertise, and to compile a [factual] record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975).

■ Under a strict application of this principle, Uniroyal must await the final decision of the Secretary of Labor before obtaining judicial review. The applicable regulations provide that interlocutory rulings of the administrative law judge are not appealable to the Secretary until the administrative law judge transfers the case to the Secretary. § 60–30.19(b). Before those rulings become final, the administrative law judge must issue his recommended findings, conclusions and decision, and certify the record to the Secretary. § 60–30.27. After the parties are given an opportunity to file exceptions to the administrative law judge's ruling, the Secretary issues a final decision, which is then subject to judicial review. 5 U.S.C. § 704.

In the present case, the administrative proceeding has reached the hearing stage, and the administrative law judge has entered his recommended decision, which is now pending before the Secretary. Thus the agency action is not final, and is ordinarily not reviewable.

Recognizing the premature character of its judicial challenge, Uniroyal seeks to place its lawsuit within one of the exceptions to the exhaustion doctrine. Emphasizing that the exhaustion doctrine should be applied with due regard for its purposes, *see McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), Uniroyal first contends that those purposes are not served when the agency is faced with purely legal issues concerning the scope of its statutory authority. In such cases, the issues will not be better framed and more amenable to judicial resolution after agency action, since no factual determinations, discretionary decisions, or expert judgments are required.

In *Jewel Companies, Inc. v. F.T.C.*, 432 F.2d 1155 (7th Cir. 1970), this court allowed an "inherently legal attack" on an agency's statutory authority prior to the issuance of its final order. Plaintiffs sought to enjoin the FTC from pursuing its administrative complaint under the Robinson-Patman Act, 15 U.S.C. § 13(c). They raised four claims that the FTC had acted outside its statutory authority in issuing the complaint. This court held that only one claim qualified for immediate judicial review—i. e., that one of the Commissioners who voted to issue the complaint had misconstrued the statutory standard for initiating a prosecution under the Act. In reaching that holding, the court stated that "[t]he question raised is inherently a legal one and does not involve any factual determinations." 432 F.2d at 1159. This language supports the conclusion that administrative remedies may be bypassed when pure questions of law are presented, and one of this court's later opinions has read *Jewel* this broadly. *Borden, Inc. v. F.T.C.*, 495 F.2d 785, 787 (7th Cir. 1974).

However, the *Jewel* opinion required more than the mere presence of a question of statutory interpretation. The court also examined the nature of the procedural error asserted to determine whether it would be subject to judicial review after final agency action. If the error could not be rectified after administrative proceedings were concluded, or if the scope of judicial review was too narrow to encompass the claim, application of the exhaustion doctrine would unfairly prevent the plaintiffs from receiving meaningful judicial consideration of their claims. *Skinner & Eddy Corp. v. United States*, 249 U.S. 557, 39 S.Ct. 375, 63 L.Ed. 772 (1919). The *Jewel* plaintiffs confronted this spectre of inadequate judicial review, since "the court of appeals would only decide whether the final order [was] supported by the evidence and would not question the authority of the Commission in issuing the complaint." 432 F.2d at 1159.

Uniroyal does not have a similar barrier to judicial review here. Prior to the administrative hearing, the administrative law judge rejected its claim that the pre-hearing discovery rules exceeded the agency's statutory authority, reasoning that such issues are inappropriate in an administrative forum. But Uniroyal has appealed that ruling to the Secretary, and the regulations provide for review of such rulings by the Secretary after the administrative law judge has issued his administrative decision. § 60–30.19(b). Assuming that the Secretary eventually issues a final order adverse to Uniroyal on this preliminary ruling, it may be questioned on judicial review. 5 U.S.C. § 704. Uniroyal therefore has adequate judicial remedies to test its theories of statutory construction.

Additional reasons support the application of the exhaustion doctrine to questions of law. Federal courts should accord great deference to an agency's construction of its authorizing statute. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). Although the administrative law judge has repudiated his function as statutory interpreter, the Secretary has not taken a similar position, since the administrative proceedings have not yet reached his domain. When they do, ". . . more light may be thrown on the [Secretary's] statutory and practical justifications for the regulation." *Toilet Goods Assoc. v. Gardner*, 387 U.S. 158, 166, 87 S.Ct. 1520, 1525, 18 L.Ed.2d 697 (1967). When these justifications become apparent, a reviewing court can better assess the issue of statutory authority.

Furthermore, this court has been reluctant to intervene in administrative proceedings to upset orders dealing with the discovery of documents, despite the presence of issues of statutory construction. In *Frey v. C. E. A.*, 547 F.2d 46 (7th Cir. 1976), the exhaustion doctrine was applied to dismiss a claim that parties to disciplinary hearings before the Commodity Exchange Authority (CEA) have a statutory right to pre-hearing discovery. The plaintiffs had been charged with misconduct in the trading of commodities, and sought subpoenas from the CEA to secure the records and testimony of certain traders. The administrative law judge denied the requests for pre-hearing discovery, finding no statutory or constitutional basis for such requests, but reserved the right to allow the production of the requested documents during the hearing if their relevance became apparent. Before the hearing began, the plaintiffs filed a complaint for declaratory and injunctive relief, claiming that the refusal to allow pre-hearing discovery violated their rights to due process of law, threatened to irreparably harm the quality of their defense at the hearing, and violated their clear statutory rights to pre-hearing discovery.

In reversing the district court's grant of injunctive relief, the court found that several considerations demonstrated the premature nature of judicial review. First, the administrative proceedings had not even progressed to a hearing, and a real possibility existed that a favorable order would moot plaintiffs' claims, or that the administrative law judge would adopt procedures during the hearing to ensure an adequate production of documents. Second,

even if the order were unfavorable, judicial review would later be available to test plaintiffs' rights to discovery. Third, although a failure to exhaust administrative procedures can generally be excused by the threat of irreparable injury, litigation expenses were insufficient injury by themselves to warrant early judicial intervention. Finally, the agency's failure to allow discovery did not fall within the exception allowing a bypass of administrative remedies where "the agency has clearly violated a right secured by statute or agency regulation." 547 F.2d at 50. The statutory provisions and regulations relied on by the plaintiffs were susceptible to a narrow reading which would exclude authorization for pre-hearing discovery. The court therefore refused to permit judicial review of the administrative law judge's interlocutory order denying discovery.

It is significant that although the *Frey* plaintiffs raised legal issues which turned predominantly, if not entirely, on matters of statutory and regulatory construction, the court required exhaustion unless the legal rights conferred by those provisions were "clearly violated." In the present case, Uniroyal raises similar legal issues, although their arguments support defensive rather than offensive challenges to discovery procedures. We will show, for the following reasons, that Uniroyal's claim of a statutory exemption from discovery is no clearer than the *Frey* plaintiffs' claim of a statutory entitlement to discovery.

■ Relying on § 555 of the Administrative Procedure Act, Uniroyal first proposes that there must be express statutory authority for pre-hearing discovery and administrative subpoenas to be available to federal agencies. Section 555 provides that no investigative act, demand, or subpoena may be issued or enforced except as "authorized by law." Uniroyal next advances the theory that the general rulemaking powers of the Secretary are insufficient to support discovery powers. Section 201 of Executive Order 11246 authorizes the Secretary to promulgate such rules and regulations "as he deems necessary and appropriate to

achieve the purposes thereof." For a regulation to be valid, it must be within the scope of the Executive Order. *Contractors Ass'n of Eastern Pennsylvania v. Secretary of Labor,* 442 F.2d 159, 175 (3d Cir. 1971), cert. denied, 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed.2d 95. Two sections of the Order form relevant guides to the scope of the Secretary's discovery powers. Section 202(5) requires government contractors to furnish all information and reports required by the Order and its implementing regulations. It also directs that the contractor ". . . will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders." Section 208 of the Order authorizes the Secretary to hold hearings "for compliance, enforcement, or educational purposes."

Seeing a distinction between the investigatory discovery mentioned in § 202 and the pre-hearing discovery sought here, Uniroyal contends that the Secretary's discovery powers are extinguished once an investigation matures into a formal administrative complaint and is set for a hearing. Because the Order is silent on the contractor's duty to furnish information once the pre-hearing and hearing process has begun, Uniroyal says no such obligation exists, and the Secretary's discovery rules therefore violate the APA requirement of express statutory authorization.

We do not believe Uniroyal has demonstrated that the Secretary's pre-hearing discovery rules so clearly exceed the bounds of the Executive Order that immediate judicial intervention is required. Uniroyal can point to no section of the Order with which those regulations are in explicit conflict. The APA requirement of legal authorization does not clearly require *express* statutory authority. The Secretary has broad rulemaking authority, and the Order gives him broad power both to engage in fact-gathering during the investigative stage to ascertain compliance, and to hold enforcement hearings to prosecute violations dis-

covered during those investigations. For the Secretary to adopt discovery rules in the gap between an investigation and a hearing does not clearly expand the agency's powers. The burden on the company producing documents appears to be the same whether it is complying with an investigative demand under § 202(5) of the Order, or a discovery request under the pre-hearing discovery regulations. Furthermore, the courts are divided on the scope of powers conferred by general rulemaking authority. *Compare Federal Maritime Comm'n v. Anglo-Canadian Shipping Co.,* 335 F.2d 255 (9th Cir. 1964) (pre-hearing discovery rule allowing production of documents must be expressly authorized by Congress and cannot be founded on general rulemaking statute) with *National Petroleum Refiners Ass'n v. F. T. C.,* 157 U.S.App. D.C. 83, 482 F.2d 672 (1973) (substantive rulemaking authority to define unfair and deceptive practices can be based on a general rulemaking statute). In reviewing the case law on this issue, the court in *National Petroleum Refiners* noted that "overwhelming judicial support [has been] given to expansive agency readings of statutory rule-making authorizations that are not flatly inconsistent with other statutory provisions, . . ." and explained that stricter standards requiring express legislative authorization have only been applied to "novel assertions of agency powers." 157 U.S.App.D.C. at 102, 482 F.2d at 691. Given the detailed enforcement scheme and broad investigative powers established by Executive Order 11246, we see nothing clearly novel or objectionable about the Secretary's pre-hearing discovery regulations. Consequently, there is insufficient cause to disrupt the administrative proceedings prior to a final agency decision.

For the foregoing reasons the judgment is AFFIRMED.

On June 14, 1978 Uniroyal renewed its motion for an injunction pending our decision on the merits, which this court had denied on October 17, 1977. The new ground asserted for such relief is the April 11, 1978 Recommended Decision of the administrative law judge which is adverse to Uniroyal. See Note 2, *supra.* That Recommended Decision is now pending on review before the Secretary. In light of our decision affirming the district court's judgment we see no basis upon which we could or should grant injunctive relief pending appeal. Accordingly, the renewed motion is DENIED.