Bogdan SIEMINSKI, Plaintiff,

v.

Raymond J. DONOVAN, et al., Defendants.

No. 83C9295.

United States District Court, N.D. Illinois, E.D.

July 24, 1984.

Richard Puchalski, Doss, Puchalski, Keenan & Bargiel, Chicago, Ill., for plaintiff.

Jack Penca, Sp. Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Bogdan Sieminski ("Sieminski") has filed a complaint seeking review of a refusal by the United States Department of Labor ("Department") to certify his employer's request that Sieminski be permitted to hold a permanent position as a precision machine tool operator despite Sieminski's status as an alien. Secretary of Labor Raymond J. Donovan ("Secretary") and Department's Employment and Training Administration submitted their administrative record of the case and moved May 14, 1984

to dismiss pursuant to Fed.R.Civ.P. ("Rule") 12 [1] or alternatively for summary judgment pursuant to Rule 56.

When Sieminski did not respond to defendants' motion and accompanying memorandum within the time permitted by this District Court's General Rule 13, this Court granted the motion to dismiss on its merits (but without prejudice) as permitted by General Rule 13(b). Sieminski then obtained a stay of the order of dismissal to allow him to file a belated opposing memorandum and a Rule 56 cross-motion for summary judgment.

In light of Sieminski's motion this Court engages in more extended analysis, but the end result of dismissal is the same—this time however with prejudice. Defendants' Rule 56 motion is granted.

### Facts

Sieminski's employer Capitol Manufacturing Company ("Capitol") sought certification of Sieminski as a permanent employee under Immigration and Nationality Act § 212(a)(14), 8 U.S.C. § 1182(a)(14) ("Section 212(a)(14)"), which provides in pertinent part:

(a) General classes

Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

    \*      \*      \*      \*      \*      \*

(14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that (A) there are not sufficient workers who are able, willing, qualified ... and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and (B) the employment

of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed....

Administrative Law Judge ("ALJ") Freeman Murray remanded an initial Notice of Findings by Department's Certifying Officer Wellington Howard against Sieminski and Capitol, but the second time around the Certifying Officer once again proposed to deny certification. Sieminski could not obtain review before an ALJ of the Certifying Officer's second Notice of Findings because Capitol refused to join in an administrative appeal as it had the first time. Both alien and employer must request administrative review under 20 C.F.R. § 656.-26(a) (citations to portions of Section 656 will take the form "Reg. § 656—"):

If a labor certification is denied, a request for an administrative-judicial review of the denial may be made:

(1) By the employer; and

(2) By the alien, but only if the employer also requests such a review.

Thus the Certifying Officer's second Notice of Findings automatically became Secretary's final determination.

### Standing

Defendants initially argue Section 212(a)(14) was intended to protect workers who are United States citizens, not workers who are aliens. Accordingly defendants contend Sieminski has no standing to seek review of Secretary's decision.

Defendants oversimplify matters by suggesting that only workers who are United States citizens are "protected" by Section 212(a)(14) in the standing sense. Our Court of Appeals pointed out two weaknesses with that analysis in *Stenographic Machines, Inc. v. Regional Administrator for Employment and Training,* 577 F.2d 521, 528 (7th Cir.1978):

1. Standing extends not only to those representing interests "protected" in the

---

**1.** Given the nature of defendants' argument, both Rule 12(b)(1) and Rule 12(b)(6) come into play.

everyday sense of being advanced, but also to those representing interests "regulated" by the statutory scheme in question.

2. Section 212(a)(14) obviously protects some aliens even in the everyday sense by permitting them into the country to perform permanent employment when other aliens are excluded.

Moreover Reg. § 656.26(a)'s requirement that both alien and employer join in requests for "administrative-judicial review" does not destroy Sieminski's standing. As Judge Aspen of this District Court demonstrated in *Gladysz v. Donovan*, No. 83 C 4957, slip op. at 4–8 (N.D.Ill. June 18, 1984), Secretary cannot divest federal courts of subject matter jurisdiction over cases otherwise reviewable simply by promulgating that regulation.[2] Thus Sieminski has standing to challenge Secretary's decision.[3]

*Review of Secretary's Decision*

■ It has already been said Capitol failed to join with Sieminski in seeking administrative review of the Certifying Officer's second Notice of Findings. That alone suffices to uphold Secretary's refusal to certify Sieminski. Reg. § 656.26(a) outlines a procedure for administrative review of the proposed denial of a labor certification, and Sieminski and Capitol did not follow it. In fact Sieminski concedes (Mem. 3) such noncompliance, asserting Capitol did not join in a request for administrative review because it is "fed up with the expense and aggravation of dealing with the bureaucracy."[4] Instead Sieminski contends compliance with Reg. § 656.26(a) should not be required because that regulation is invalid. As the following discussion reflects, the federal government's broad interest in immigration law forecloses Sieminski's contention.

■ According to Reg. § 656.26(b)(2) Sieminski's failure to file a timely appeal pursuant to Reg. § 656.26(a) "constitute[s] a failure to exhaust available administrative remedies." Though it is true Sieminski has not *pursued* the last administrative remedy of an appeal, he *has* exhausted his administrative remedies in the sense none now remains open to him.[5] His time for internal administrative review has expired, and the second Notice of Findings has become a "final agency action" as required by 5 U.S.C. § 704. Policies underlying the doctrine of exhaustion of administrative remedies, as explained in *Uniroyal, Inc. v. Marshall*, 579 F.2d 1060, 1064 (7th Cir.1978) are inapplicable here: It is not necessary "to defer judicial review" until the administrative process has run its course, nor is it necessary to abstain "to avoid collateral, dilatory action" in court. See also *Denberg v. United States Railroad Retirement Board*, 696 F.2d 1193, 1201 (7th Cir.1983)

2. Indeed the regulation, though it permits an alien to sue only together with his or her employer, plainly puts the alien within the "zone of interests" in the standing analysis as required by *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).

3. Sieminski cites three cases that assumed (without deciding) aliens have standing to obtain review of denials of labor certifications: *Shuk Yee Chan v. Regional Manpower Administrator*, 521 F.2d 592 (7th Cir.1975); *Jadeszko v. Brennan*, 418 F.Supp. 92 (E.D.Pa.1976); and *Ozbirman v. Regional Manpower Administrator*, 335 F.Supp. 467 (S.D.N.Y.1971). While those cases implicitly support this Court's conclusion, they do not dispose of the question how Reg. § 656.26(a) affects either (1) standing or (2) the mislabeled "exhaustion of administrative remedies" requirement discussed below. All three cases were decided before January 18, 1977,

when Reg. § 656.26(a) was promulgated in its present form. See *Gladysz,* slip op. at 6.

4. That assertion is totally without support in the record. Whether in opposition to Secretary's Rule 56 motion or in support of his own or both, Sieminski was obligated to tender that factual statement in affidavit form or in the form of admissible evidence (after all such motions are intended to substitute for trials by *proving* the absence of material fact issues). Nonetheless this opinion will (until its very end) assume arguendo the accuracy of Sieminski's statement, if only to obviate the possibility of still another motion to cure the flaw.

5. This is the sense in which "exhaustion" is used, for example, in federal habeas cases requiring exhaustion of state remedies before a federal court will consider a constitutional challenge to a state conviction.

(Wood, J., dissenting). In short, there is no reason to delay review.

Whether framed in terms of "non-exhaustion" or "waiver" or categorized in some other fashion, Reg. § 656.26(a)'s actual effect is to bar Sieminski from administrative review of the second Notice of Findings because he failed to appeal together with his employer. Thus the principal issue in this case is whether that strict condition Department places on administrative review is valid. If it is, Secretary's decision must be upheld.

■ Sieminski challenges Reg. § 656.26(a) as unconstitutional because it denies him due process of law.[6] In that respect the standard for federal alien regulations is that of minimal rationality. For example *Narenji v. Civiletti*, 617 F.2d 745, 747 (D.C.Cir.1979) (citations omitted), *cert. denied*, 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980) held:

> Distinctions on the basis of nationality may be drawn in the immigration field by the Congress or the Executive.... So long as such distinctions are not wholly irrational they must be sustained.

Plaintiff's rejected case in *Narenji* was actually stronger than Sieminski's here, for the *Narenji* plaintiff showed discrimination among aliens on the basis of nationality, not merely discrimination against aliens in general.

Sieminski argues discrimination against aliens in general must be subjected to strict scrutiny. But *Bernal v. Fainter*, —— U.S. ——, 104 S.Ct. 2312, 81 L.Ed.2d 175 (1984) and other alien discrimination cases are not in point because they deal with "State law that discriminates on the basis of alienage" (*id.* at 2316). To the extent *Hampton v.*

*Mow Sun Wong*, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976) may be read as imposing that same strict scrutiny on federal government policies, it is limited in its application (*id.* at 114, 96 S.Ct. at 1910) to agencies having "no responsibility for foreign affairs, for treaty negotiations, for establishing immigration quotas or conditions of entry, or for nationalization policies." In fact *Hampton* said (*id.*):

> Indeed, it is not even within the responsibility of the Commission to be concerned with the economic consequences of permitting or prohibiting the participation by aliens in employment opportunities in different parts of the national market.

But because the regulation challenged here was promulgated pursuant to a provision of the Immigration and Nationality Act, and because that Act controls precisely what was distinguished by the *Hampton* quotation, the regulation here is a classic example of one beyond the reach of *Hampton*.[7]

■ Reg. § 656.26(a) is surely not wholly irrational, as this Court stated in its initial memorandum opinion on the issue. To require an alien's employer to join in seeking administrative review is a rational way for Secretary to make certain the alien's job will still be available to him if he prevails, thus assuring a live controversy. Sieminski argues Reg. § 656.26(a) is invalid in this case because it punishes an alien whose job is still available but whose employer is simply "fed up ... with the bureaucracy." That attack fails for a number of independent reasons, any one of which would suffice:

> 1. Reg. § 656.26(a) need only be "not wholly irrational." It is not helpful to Sieminski that the regulation may have

---

6. In another context our Court of Appeals approved Department's procedures for enforcing Section 212(a)(14) in *Production Tool Corp. v. Employment & Training Administration*, 688 F.2d 1161, 1165–70 (7th Cir.1982). Then in *Gladysz*, slip op. at 8 Judge Aspen held Reg. § 656.26(a) invalid to the extent it purports to eliminate *judicial* review by aliens not joined by their employers in requesting such review. This Court's current decision deals with a question not decided in *Production Tool* and expressly left open in *Gladysz*, slip op. at 6–7: whether Secretary may deny *administrative* review to aliens not joined by their employers in requesting such review.

7. Moreover *Production Tool Corp.*, 688 F.2d at 1167 has found in interpreting other regulations promulgated under Section 212(a)(14):

> The interpretation of a statute by the agency charged with enforcement or administration is entitled to great deference provided it is consistent with the congressional purpose.

failed *in this instance* to vindicate the rational purpose supporting it, because prohibitions of over- and under-broad construction do not apply to policies subject only to minimal scrutiny.

2. Even if Sieminski accurately states Capitol's ultimate point of view (but see n. 4), the fact remains Capitol *did* bring the initial request for certification—so a presumption of lack of interest drawn from its non-joinder in the appeal would certainly be rational. To escape that presumption Sieminski could have sought an administrative appeal, offering to Secretary the same reason for Capitol's non-joinder he advances here. He offers nothing to explain why he did not do that, and this Court will not conclusively presume the futility of such an effort.

3. Even if accepted, Sieminski's excuse indicates a value judgment by Capitol in market terms about the extent to which it wants to assert its desire to hire Sieminski. Thus Reg. § 656.26(a)'s effect may be minimally rational even in the context of the facts Sieminski alleges.

4. As n. 4 reflects, to this point Sieminski's factual contention has been assumed accurate. But this Court is constrained to observe that although Sieminski Mem. 3 claims his excuse "is not disputed," he has not proved it and defendants have not conceded it. As a wholly unsupported assertion it is incapable either of justifying summary judgment for Sieminski or of averting summary judgment against him. When Rule 56 motions are at issue parties cannot hold back evidence and may be held to the consequences if they do. See *Keene*

*Corp. v. International Fidelity Insurance Co.*, 736 F.2d 388 at 393 (7th Cir. 1984), adopting this Court's opinion below, 561 F.Supp. 656, 662–67 (N.D.Ill. 1983).

Thus Secretary's decision must be affirmed because he was rationally entitled to hold Sieminski was administratively foreclosed from objecting to the Certifying Officer's second Notice of Findings.[8]

### Conclusion

Based on the administrative record the parties have submitted, there is no genuine issue of material fact and defendants are entitled to a judgment as a matter of law. Their Rule 56 motion for summary judgment is granted and Sieminski's Rule 56 motion is denied. This action is dismissed with prejudice.

---

**8.** It must be noted that even if Sieminski had prevailed on this Court not to view his failure to request administrative review along with Capitol as a bar, his position would still be doomed. Sieminski Mem. 13 argues the Certifying Officer wrongly based his second Notice of Findings on a harmless error committed by Capitol. However the regulation he cites, Reg. § 656.24(b), clearly *permits* the Certifying Officer to deny certification based on employer error even if that error was harmless (emphasis added):

The regional or national Certifying Officer, as appropriate, shall make a determination either to grant the labor certification or to issue a *Notice of Findings* on the basis of whether or not:

(1) The employer has met the requirements of this Part. However, where the Certifying Officer determines that the employer has committed harmless error, the Certifying Officer nevertheless *may* grant the labor certification, provided, that the labor market has been tested sufficiently to warrant a finding of availability of and lack of adverse effect on the U.S. workers.

That regulation is also not wholly irrational, because it assures complete certification applications.