

FILED

Oct 24 2017, 9:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Steven M. Badger
Alexandra R. French
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE –
INDIANA COMPENSATION
RATING BUREAU

E. Scott Treadway
EST Law, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE –
INDIANA WORKER'S
COMPENSATION BOARD

Curtis T. Hill, Jr.
Attorney General of Indiana

Kyle Hunter
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Risk Metrics Corporation, *Appellant,* <br><br> v. <br><br> Indiana Compensation Rating Bureau and Indiana Worker's Compensation Board, *Appellees.* | October 24, 2017 <br><br> Court of Appeals Case No. 49A02-1609-PL-2083 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Timothy W. Oakes, Judge <br><br> Trial Court Cause No. 49D02-1408-PL-26675 |

**Najam, Judge.**

## Statement of the Case

[1] Risk Metrics Corporation, n/k/a LexisNexis Risk Solutions, Inc., ("LexisNexis") appeals the trial court's entry of summary judgment for the Indiana Compensation Rating Bureau ("the Rating Bureau")[1] and the Indiana Worker's Compensation Board ("the Board") on the Rating Bureau's complaint for declaratory judgment. LexisNexis raises a single issue for our review, which we restate as whether the trial court erred when it concluded that certain insurance coverage policy data held by the Rating Bureau that were accessible by the Board are not subject to public access pursuant to Indiana's Access to Public Records Act, Ind. Code §§ 5-14-3-1 to -10 (Supp. 2017) ("APRA"). We hold that the records of that data held by the Rating Bureau are confidential records and, therefore, are not available under APRA. Accordingly, we affirm the trial court's judgment.

## Facts and Procedural History[2]

[2] The Board is the state agency that is charged with administering Indiana's Worker's Compensation Laws, I.C. §§ 22-3-2-2 to -6-3. Those laws require, in relevant part, that every employer in Indiana carry insurance to cover worker's

---

[1] The Rating Bureau is not an agency of the State but, rather, is a private entity created by Indiana statute. *See* Ind. Code § 27-7-2-3 (Supp. 2017).

[2] We held oral argument in the Indiana Court of Appeals courtroom on August 24, 2017. We commend counsel for their excellent advocacy.

compensation claims, unless the employer is exempt. An employer required to carry such insurance "shall file with [the Board], in the form prescribed by the [B]oard, within ten (10) days after the termination of the employer's insurance by expiration or cancellation, evidence of the employer's compliance . . . ." I.C. § 22-3-5-2. However, at any time the Board "is entitled to request that an employer provide the [B]oard with current proof of compliance," and if the employer "fails or refuses to provide current proof of compliance" the Board "may assess a civil penalty against the employer . . . ." I.C. § 22-3-5-2.5(a), (b). Prior to 1998, the Board received and maintained employer proof of compliance data ("POC data") in accordance with Section 22-3-5-2 in the form of paper filings submitted by employers directly to the Board.

[3] Meanwhile, insurers certified to provide worker's compensation coverage in Indiana are, as a matter of law, members of the Rating Bureau. I.C. § 27-7-2-3. Although created by statute, the Rating Bureau is a private entity regulated by the Indiana Department of Insurance ("IDOI"). I.C. § 27-7-2-28.2. According to the Indiana Code, the Rating Bureau exists to achieve the following purposes:

> (1) To prohibit price fixing agreements and other anticompetitive behavior by companies.

> (2) To protect policyholders and the public against the adverse effects of excessive, inadequate, or unfairly discriminatory rates.

(3) To promote price competition among companies so as to provide rates that are responsive to competitive market conditions.

(4) To provide regulatory procedures for the maintenance of appropriate data reporting systems.

(5) To improve availability, fairness, and reliability of insurance.

(6) To authorize essential cooperative action among companies in the ratemaking process and to regulate such activity to prevent practices that tend to substantially lessen competition or create a monopoly.

(7) To encourage the most efficient and economic marketing practices.

I.C. § 27-7-2-1.1.

[4] Pursuant to those purposes, one of the key functions of the Rating Bureau is to collect statistical policy data from its members, which the Rating Bureau then uses to recommend minimum premiums and rates to the Commissioner of the IDOI. I.C. § 27-7-2-4(a). And to facilitate the collection of that data, since December 31, 1997, the Rating Bureau has used as its vendor the National Council on Compensation Insurance ("NCCI"). NCCI is a nongovernmental, not-for-profit company based in Florida. NCCI collects a vast array of statistical policy data, including POC data, from worker's compensation insurance providers throughout the United States, which NCCI then reports to various jurisdictions as required on behalf of those providers.

[5] On January 1, 1998, the Board implemented a new system in which the paper proof-of-compliance filings from employers under Section 22-3-5-2 were replaced with electronic policy data from insurers. In particular, the Board entered into a contract with NCCI pursuant to which NCCI, acting as the Board's agent, would "report . . . to the Board" the policy data NCCI had collected on Indiana's certified worker's compensation insurance providers. Appellant's App. Vol. V at 40. Between January of 1998 and August of 2014, NCCI provided the Indiana policy data directly to the Board electronically.

[6] LexisNexis is in the business of compiling and selling business data that it collects through public records requests. Between 1999 and 2011, LexisNexis and the Board had several APRA disputes with respect to the policy data NCCI had collected and provided to the Board. In 2012, LexisNexis filed a complaint against the Board under APRA for access to that policy data. In January of 2013, LexisNexis and the Board settled that complaint pursuant to an agreement in which the Board agreed to make the policy data available for public access "so long as no change of law" occurred to make that data "confidential or exempted from disclosure in any way . . . ." *Id.* at 35-36.

[7] Thereafter, effective July 1, 2013, the Indiana General Assembly enacted a new statute codified at Indiana Code Section 27-7-2-40. P.L. 275-2013 § 20. According to Section 27-7-2-40:

> The [Rating Bureau] may collect data from its members under this chapter, including:

(1) claims data;

(2) policy data such as policy number, policy term, and employer and employee identification information; and

(3) proof of coverage data such as employer identification information, classification information, carrier information, agency identification information, premium information, and payroll data.

Unless this chapter specifically states otherwise, *all data collected by the [Rating Bureau] from its members is confidential and shall not be disclosed or disseminated to third parties unless consented to by the [Rating Bureau]*. To the extent this chapter authorizes the [Rating Bureau] to share the data with the [IDOI] or the [Board], the data must remain confidential. The [IDOI] and the [Board] shall not publish the data or distribute the data to third parties.

(Emphasis added.) On April 1, 2014, LexisNexis again requested the Board to provide access to the NCCI-collected policy data.[3] The Board denied the request, citing Indiana Code Section 27-7-2-40. LexisNexis then filed a complaint with the Indiana Public Access Counselor ("PAC").

[8] While the PAC's review of that complaint was pending, the Board terminated its contract with NCCI and entered into a new agreement with the Rating Bureau. Pursuant to that agreement, the Rating Bureau agreed to provide the Board with some of the statistical policy data NCCI had collected for the

---

[3] There is no dispute that the policy data collected by NCCI on behalf of the Board was the same policy data NCCI collected on behalf of the Rating Bureau.

Rating Bureau on the condition that the data remained confidential with the Board. However, the contract further provided that the Board and the public would be permitted to view the POC data necessary to verify a given employer's compliance with Indiana's worker's compensation insurance requirement on a given date using a web portal. Specifically, the contract provided that the Rating Bureau:

> A.     shall provide to the [Board] online internet based inquiry access to limited non-confidential data, which shall only include the name of the employer, the name of the worker's compensation insurance coverage provider, the policy number, and the effective date of coverage ("Basic Coverage Data");

> B.     shall provide internet based online inquiry access to the Basic Coverage Data to allow the general public to verify Indiana worker's compensation coverage through a link on the [Board's] website; and

> C.     may, in the [Rating Bureau's] sole discretion, transmit to the [Board] additional confidential coverage and policy data the [Rating Bureau] collects from its members. For purposes of this Agreement, the additional data may include data elements or a portion thereof as the parties may agree, such as policy number, insured business name and address, additional business names and addresses on the policy, policy effective date, policy expiration date, name of insurance provider, employer FEIN number, and any notices of cancellation and reinstatement ("Additional Policy Data"). The Additional Policy Data shall be transmitted to the [Board] at such intervals as the parties may agree from time to time. The Additional Policy Data shall be transmitted to the [Board] in an electronic PDF file or such other format as the parties may agree. The Additional Policy Data transmitted by the [Rating Bureau] to the [Board] shall be

conspicuously marked as "CONFIDENTIAL" and "NOT
AVAILABLE FOR DISTRIBUTION OR INSPECTION." The
[Rating Bureau] and the [Board] hereby acknowledge that the
Additional Policy Data may be withheld by the [Rating Bureau].
Further, the Additional Policy Data shall not be distributed to
third parties.

Appellant's App. Vol. V at 119-20. Thereafter, the Rating Bureau and the
Board instructed NCCI to cease electronic transfers of policy data directly to the
Board.

[9] After the Rating Bureau and the Board executed their contract, the PAC issued
an informal opinion on the pending APRA request in LexisNexis's favor.
Following that opinion, the Rating Bureau filed its complaint for declaratory
judgment against LexisNexis and the Board to prevent the Board from releasing
the NCCI-collected policy data to LexisNexis. LexisNexis filed a counterclaim
against the Rating Bureau and a cross-claim against the Board to compel public
access to that data under APRA.

[10] All parties then moved for summary judgment, and, after a hearing, the trial
court granted the motions for summary judgment filed by the Board and the
Rating Bureau and denied LexisNexis's cross-motion. In entering its order, the
trial court stated as follows:

8. The Board does not presently create, receive, retain, or
maintain the data or records sought by [LexisNexis]. Multiple
Board employees, including the Board Chair, testified that the
Board does not possess or have access to data and records
collected by the [Rating Bureau]. Further, there is no evidence in

the record that the data or records sought by [LexisNexis] is filed with the Board. Accordingly, the Board does not possess or control public records sought by [LexisNexis].

9. To the extent the [Rating Bureau], either directly or through its vendor, NCCI, has elected to voluntarily share or provide data access to the Board, the Indiana Legislature has, as recently as 2013, made clear such data is confidential, cannot be shared with third parties, and is not subject to APRA. . . . The plain language of this statute makes clear that [the Board-]collected [POC] data is confidential.

10. [LexisNexis] attempts to circumvent Indiana Code § 27-7-2-40 by asserting the Board has a duty to accumulate additional [POC] data under Indiana law and[,] once in possession of this data, cannot refuse to disclose the same. The [c]ourt disagrees with [LexisNexis]. Multiple witnesses for the Board, including the Board Chairperson, testified the Board does not collect, need, or utilize the [POC] data sought by [LexisNexis]. Additionally, the statute relied upon by [LexisNexis] (Ind. Code § 22-3-5-2) does not mandate the Board to collect the extensive [POC] data sought by [LexisNexis].

11. Moreover, *the Board has agreed that the limited access website portal made available by the [Rating Bureau] fulfills the Board's statutory needs. This [c]ourt cannot interfere with that determination*.

12. Accordingly, the [c]ourt hereby finds the Board is not in control or possession of records or documents subject to APRA sought by LexisNexis, that the Board is not required to collect the [POC] data sought by LexisNexis, and[,] to the extent the [Rating Bureau] causes data or records to be supplied to the Board, that data is confidential and is statutorily exempted from APRA.

Appellant's App. Vol. II at 17-19 (emphasis added; internal citations omitted).[4]
This appeal ensued.

## Discussion and Decision

[11]    LexisNexis appeals the trial court's denial of its motion for summary judgment and the court's entry of summary judgment for the Rating Bureau and the Board.  Our standard of review is clear:

> We review summary judgment *de novo*, applying the same standard as the trial court:  "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)).  "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences."  *Id.* (internal citations omitted).
>
> The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact.  *Id.* at 761-62 (internal quotation marks and substitution omitted).  And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of

---

[4] Although not relevant in light of our holding on appeal, following its order on the motions for summary judgment the trial court entered two subsequent orders even though the court had declared its order on the summary judgment motions to be a final judgment.

summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (alterations original to *Hughley*).

[12] Here, the trial court entered detailed findings of fact and conclusions thereon in its summary judgment order. While such findings and conclusions are not required in a summary judgment and do not alter our standard of review, they are helpful on appeal for us to understand the reasoning of the trial court. *See Knighten v. E. Chicago Hous. Auth.*, 45 N.E.3d 788, 791 (Ind. 2015). We also note that the trial court had before it cross-motions for summary judgment, but that also does not alter our standard of review. *Id.*

[13] This appeal presents questions of statutory interpretation. As the Indiana Supreme Court has stated:

> [S]tatutory interpretation is a question of law that we review *de novo*. In interpreting a statute, the first step is to determine whether the Legislature has spoken clearly and unambiguously on the point in question. When a statute is clear and unambiguous, we apply words and phrases in their plain, ordinary, and usual sense. When a statute is susceptible to more than one interpretation it is deemed ambiguous and thus open to judicial construction. When faced with an ambiguous statute, our primary goal is to determine, give effect to, and implement the intent of the Legislature with well-established rules of statutory construction. We examine the statute as a whole,

reading its sections together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute. And we do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result.

*Anderson v. Gaudin*, 42 N.E.3d 82, 85 (Ind. 2015) (citations, alterations, and quotation marks omitted).

[14] The dispute between the parties here centers around LexisNexis's APRA request to the Board. APRA provides that "it is the public policy of the state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees." I.C. § 5-14-3-1. "Thus, in APRA our legislature declared that transparency in government is the public policy of the State of Indiana. But the public's right of access to public records is also subject to well-recognized exceptions under APRA." *Groth v. Pence*, 67 N.E.3d 1104, 1108 (Ind. Ct. App. 2017), *trans. denied*.

[15] We agree with the trial court that disclosure of the records sought by LexisNexis under APRA is prohibited by law. APRA expressly removes from public access those records "declared confidential by state statute." I.C. § 5-14-3-4(a)(1). And Indiana Code Section 27-7-2-40 unambiguously declares that the insurance company records held by the Rating Bureau are "confidential and shall not be disclosed or disseminated to third parties" without the Bureau's consent. The records sought by LexisNexis under APRA are the insurance records of the Rating Bureau's members, which contain the statistical policy

data collected by NCCI. As a matter of law, those records are held by the Rating Bureau. As such, the records sought are confidential and are not subject to disclosure under APRA.

[16] Nonetheless, LexisNexis proffers two theories to avoid the result required under the Indiana Code. First, LexisNexis asserts that Indiana's Worker's Compensation Laws require the Board itself to collect and maintain POC data from Indiana's employers. Thus, LexisNexis asserts, the vast array of statistical policy data collected by NCCI on behalf of the Board must also be held by the Board and, therefore, subject to public access. In support of that position, LexisNexis substantially relies on Indiana Code Section 22-3-5-2, which states that an "employer" in Indiana is "required to carry insurance" for worker's compensation claims and "shall file with the worker's compensation board, in the form prescribed by the board, within ten (10) days after the termination of the employer's insurance by expiration or cancellation, evidence of the employer's compliance . . . ."

[17] Section 22-3-5-2 does not say what LexisNexis claims it says. The statute does not expressly direct the Board to do anything at all. Rather, Section 22-3-5-2 places a burden on employers, not the Board, and it is a limited burden at that: employers "shall file" with the Board proof of their compliance, but only if existing insurance coverage is terminated. And even then, any manner of "evidence" of compliance suffices. I.C. § 22-3-5-2.

[18]  Moreover, Section 22-3-5-2 does not require the Board to collect anything equivalent to the statistical policy data collected by NCCI that LexisNexis seeks under APRA. Indeed, even if Section 22-3-5-2 could be read to mean that the Board must collect POC data from Indiana's employers, that POC data is nowhere near as comprehensive as the statistical policy data collected by NCCI and actually sought by LexisNexis. Rather, the POC data would be a very small subset of the statistical policy data that LexisNexis seeks to obtain. In other words, the statistical policy data that LexisNexis seeks from the Board reaches far beyond the limited data that employers are required to provide to the Board under Section 22-3-5-2.

[19]  And, significantly, that limited POC data is already accessible to the public, and LexisNexis, by way of the Board's contract with the Rating Bureau. Again, according to the Board's contract with the Rating Bureau, the Rating Bureau "shall provide" to both the Board and the public "internet based online inquiry access" to "limited non-confidential data, which shall only include the name of the employer, the name of the worker's compensation insurance coverage provider, the policy number, and the effective date of coverage." Appellant's App. Vol. V at 119-20. Further, Indiana Code Section 22-3-5-2.5(a) states that the Board "is entitled to request that an employer provide the [B]oard with current proof of compliance . . . ." Thus, the Board may determine an employer's compliance with the worker's compensation insurance coverage requirement on a case-by-case basis, which the web portal enables the Board to

do. That same access to case-by-case information is already made available to the public—and to LexisNexis—through the web portal.[5]

[20] LexisNexis's APRA request also disregards the fact that Section 22-3-5-2 expressly leaves the manner in which an employer complies with that statute's filing requirement to the discretion of the Board. In particular, Section 22-3-5-2 states that employers shall file, when required, their evidence of compliance "in the form prescribed by the [B]oard." It is clear that the Board, in the exercise of its discretion under the statute, has deemed evidence of compliance through the records held by the Rating Bureau to be the form prescribed by the Board, which brings LexisNexis's APRA request back to the confidentiality requirement of Section 27-7-2-40.

[21] Still, LexisNexis contends that it would be "irrational" to allow the Board to use the Rating Bureau as a proxy to collect otherwise "required regulatory filing[s]" and thereby deny public access to those filings. Appellant's Br. at 48. But that assertion is based on LexisNexis's misinterpretation of Section 22-3-5-2, which does not require the Board to collect the vast array of statistical policy data LexisNexis seeks and does not require employers to file such data with the Board. Indeed, there are no required regulatory filings under Section 22-3-5-2 other than an employer's proof of compliance if existing insurance coverage is

---

[5] Any other access the Board might seek to statistical policy data held by the Rating Bureau is only available to the Board in the Bureau's discretion. That additional policy data is not required or even implicated by Section 22-3-5-2, which, again, only requires employers to report to the Board when their coverage has been terminated but does not otherwise require the Board to maintain POC data.

terminated, which information is already available to the public. Further, it is not irrational for the Board in the exercise of its statutory discretion to verify employer compliance by using a subset of the data held by the Rating Bureau, which the Bureau already collects by operation of law from insurers to support the IDOI. And the General Assembly has declared that the other Rating Bureau data are confidential.

[22] LexisNexis also asserts that the statistical policy data is really held by NCCI, not the Rating Bureau, and that the Board's previous releases of that data and previous contract with NCCI are relevant to the instant proceedings. But we reject those contentions. Whatever the Board's prior decisions on the requested data, the instant case is substantially different in that the Rating Bureau is a party and has objected to the release of the data, which, as a matter of law, it collects from insurers on a confidential basis. Moreover, representatives for NCCI and the Board agreed that the Board's prior contract with NCCI is no longer in force. The assertions of LexisNexis to the contrary are not persuasive.

[23] In sum, LexisNexis asks that we impose a requirement on the Board to collect records and statistical policy data that the Indiana Code does not require the Board to collect; that we mandate that those records be filed directly with the Board when the Indiana Code leaves the form prescribed for such records to the discretion of the Board; and that we order the Board to maintain a database of those records that is redundant to the Rating Bureau's database. We reject each of those propositions. We hold that the records sought by LexisNexis pursuant to APRA are confidential as a matter of law and, therefore, are not subject to

disclosure, and we approve of the manner in which the Board has made POC data publicly available under its contract with the Rating Bureau. Accordingly, we affirm the trial court's entry of summary judgment for the Board and the Rating Bureau and the court's denial of LexisNexis's motion for summary judgment.

[24] Affirmed.

Bradford, J., concurs.

Riley, J., dissents with separate opinion.

| | |
|---|---|
| Risk Metrics Corporation,<br><br>*Appellant-Defendant,*<br><br>v.<br><br>Indiana Compensation Rating<br>Bureau and Indiana Worker's<br>Compensation Board,<br><br>*Appellees-Plaintiffs.* | Court of Appeals Case No.<br>49A02-1609-PL-2083 |

**Riley, Judge dissenting.**

I respectfully dissent from the majority's opinion affirming the trial court's judgment and holding that the insurance coverage policy data, as held by the Rating Bureau, are confidential and, therefore, not available for public dissemination under APRA. I specifically part ways with the majority's insistence that LexisNexis' statutory interpretation "does not say what LexisNexis claims it says." *See* Slip Op. p. 13.

[26] Focusing on the "shall file with" language of I.C. § 22-3-5-2, LexisNexis contends that the Board is statutorily mandated to receive and collect an employer's proof of insurance coverage. As this information is assembled by a public agency, LexisNexis maintains that the information is a public record which can be requested under APRA. Accordingly, LexisNexis alleges that the Board cannot ignore its statutory duty by outsourcing the collection of employer's insurance information to a third party. Even if outsourced to a private agency, LexisNexis advocates that the record itself does not lose its characterization of public record for APRA purposes and should remain publicly available.

[27] Unlike the majority, I find that I.C. § 22-3-5-2 unequivocally imposes on the Board a statutory duty to receive and collect the insurance information employers "shall file with" the Board. Although the Board now, in blatant disregard of its duty, asserts that it no longer "want[s] or need[s] a copy of the [] data[,]" as it claims the limited access through the public web portal to be sufficient, the designated evidence of the T.R. 30(b)(6) witness confirms that the Board enjoys greater access to the proof of coverage data than the data accessible on the web portal. (Board Br. p. 19). The witness noted that the link on the Board's website to access the web portal transferred users to an NCCI page. He admitted that, through his position on the Board, he had access to:

> effective dates of the policy, the employer's name and address, or at least other business locations, because a lot of times there are policies that may cover more than one business, might give us information on the d/b/a, information regarding cancellation,

renewal and reinstatement.  I think it might have something about premium information.

\* \* \* \*

There's probably a lot more information that I don't completely understand, that I have access to, and generally doesn't have any, you know, utility for what I do.

(Appellant's App. Vol. IV, p. 134).  Also, the Board, in its appellate brief—and again during the oral argument—begrudgingly conceded that it "can view more data fields than the public through the online portal." (Board's Br. p. 14).  The designated evidence shows that the Board continues to enjoy remote access to every data element sought by LexisNexis and collected by NCCI by order of the Rating Bureau.  As such, all this material "received" by the public agency can potentially be characterized as a public record under APRA.  *See* I.C. § 5-14-3-2(r).

[28] Instead of allowing public access to this data as required by APRA, the Board and the Rating Bureau, as now condoned by the majority, rely on I.C. § 27-7-2-40 and the provisions of the data sharing agreement entered into on June 10, 2014, to effectively shield this information behind a technological and contractual firewall.  While I agree that I.C. § 27-7-2-40 confers confidentiality on the "data collected by the [Rating Bureau] from its members" and whose classified character must be maintained when the data is disseminated to the Board, this mandate, by its express language, does not encompass the data <u>directly filed</u> with the Board by employers, as contemplated by I.C. § 22-3-5-2.

Similarly, although the data sharing agreement between the Board and the Rating Bureau clarifies that the proof of coverage data is owned by the Rating Bureau, a non-governmental agency, and therefore not subject to the provisions of the APRA, the data sought by LexisNexis relates only to information to verify the insurance coverage and policy rates, as filed directly with the Board. Specifically, LexisNexis only seeks a limited set of policy information about an employer's insurance coverage and public contact information. Accordingly, LexisNexis is not requesting the elaborate information collected by the Rating Bureau, which also includes personal identifiable information and pricing structure, but is focused only on the proof of coverage data the Board is statutorily mandated to collect and which is not deemed confidential pursuant to I.C. § 22-3-5-2 or is included in I.C. § 27-7-2-40.

[29] Despite the Board's insistence that it is merely exercising its own discretionary power by limiting access to the data through the public web portal, in reality this discretion itself is a fallacy as the accessibility to the data is being determined by the Rating Bureau under the guise of the contractual provisions of the data sharing agreement. Essentially, a non-governmental third party is now dictating the public's access to public records through a contract entered into with a governmental entity.

[30] "Indiana, like other jurisdictions, recognizes the need for unfettered action by administrative agencies operating within the sphere of their authority." *Ind. Alcoholic Beverage Commission v. McShane*, 354 N.E.2d 259, 268 (Ind. Ct. App. 1976). Accordingly, it is generally acknowledged that a court may not

substitute its judgment for that of the agency in matters within the realm of the agency's delegated authority, if the agency's exercise of its discretionary powers is valid and justified. *See id.* Therefore, an agency may not exercise discretion in a manner that undermines the express will of the legislature. *Ashlin Transp. Servs. v. Indiana Unemployment Ins. Bd.*, 637 N.E.2d 162, 165-66 (Ind. Ct. App. 1994) (holding agency's interpretation of statute was unreasonable given the plain meaning and not entitled to deference). Pursuant to its statutory mandate, the Board must collect an employer's proof of coverage information. *See* I.C. § 22-3-5-2. Checking compliance of one employer at a time, one date at a time, provides only a piecemeal view of the overall level of long-term compliance by Indiana's employers that an insurance is designed to afford, and thus reveals nothing about the effectiveness of the Board's compliance efforts and in fact essentially results in the elimination of a mandatory filing.

[31] The APRA's purpose is to enhance a government's accountability and legitimacy by giving the public quasi unfettered access to its public records. Within this structure of APRA's answerability, the data sharing agreement became a vehicle to effectuate an improper evasion of the applicability of APRA. Although a public agency may enter into a contract for the storage of public records, this contract cannot "unreasonably impair" the right of the public to inspect and copy the agency's public records. *See* I.C. § 5-14-3-3(g); *Knightstown Banner, LLC. v. Town of Knightstown*, 838 N.E.2d 1127, 1133 (Ind. Ct. App. 2005), *reh'g denied, trans. denied.* Here, the data sharing agreement by which the public is accorded very limited access to public records through a

web portal accomplishes exactly this unreasonable impairment which is prohibited under APRA.

[32] By concluding that because the Board does not presently create, receive, retain, or maintain the data requested by LexisNexis the Board is not subject to APRA, the trial court—and now the majority—truncated and ignored the plain statutory language of I.C. § 22-3-5-2, which mandates the Board to receive an employer's proof of coverage filings. Unlike the Rating Bureau which "may" collect proof of coverage data, the legislature has placed an affirmative legal obligation on the Board to collect the proof of coverage. *See* I.C. § 27-7-2-40. Although the exigencies of today's technological advances have replaced the traditional paper filings with the more modern electronic storage options provided by third parties, the legal construct of the Board's statutory duty or the requirements of APRA have not changed. I find that the piecemeal access to the information via the public web portal is not a viable enforcement of the statute and is insufficient to check an employer's compliance with worker's compensation insurance.

[33] In sum, the majority's conclusion today amounts to an open invitation to erode the transparency of governmental affairs which is one of the fundamental bedrocks of the American constitutional form of representative government. I would reverse the trial court's judgment and enter summary judgment in favor of LexisNexis on its Complaint for violation of APRA.