

I N   T H E

# Indiana Supreme Court

Supreme Court Case No. 26S-PL-83

## Indiana Compensation Rating Bureau,

*Appellant-Defendant,*



**FILED**

Mar 17 2026, 2:45 pm

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

and

## Indiana Department of Insurance,

*Defendant,*

–v–

## Technology Insurance Company,

*Appellee-Plaintiff.*

---

Argued: September 4, 2025 | Decided: March 17, 2026

Appeal from the Marion Superior Court
No. 49D13-2207-PL-22174
The Honorable James Joven, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-PL-857

---

**Opinion by Justice Slaughter**

Justices Massa, Goff, and Molter concur.
Chief Justice Rush concurs in part and dissents in part with separate opinion.

**Slaughter, Justice.**

By law, Indiana pools insurance companies to share the risks of providing worker's compensation coverage to employers that cannot obtain insurance. Technology Insurance Company provides worker's compensation insurance under this statutory scheme through a contractual "Assigned Risk Plan" with the Indiana Compensation Rating Bureau, which oversees this statewide pooling arrangement. After reaching a multi-million-dollar settlement for a policy issued under the Plan, the Company sought reimbursement from the Bureau, but the Bureau denied repayment. After almost five years of litigation, an administrative law judge, ALJ, found the Company was entitled to full repayment. The Company then sought attorneys' fees, interest, and expenses from a trial court on judicial review, but the Bureau opposed it. The trial court granted the Company's request for fees, interest, and all other appropriate relief.

On appeal, the Bureau now concedes the Company is entitled to fees, but it says the Company must first exhaust administrative remedies on these claims. This action, the Bureau claims, is, at bottom, an agency action requiring exhaustion. We hold that the Company must exhaust administrative remedies because of the Plan's dispute-resolution provisions and underlying contracts, and that the Company did so by pursuing its underlying claim against the Bureau. We affirm the trial court's judgment granting the Company's petition for judicial review and remand with instructions.

I

A

From 2008 to 2020, Technology Insurance Company provided worker's compensation insurance in Indiana to employers that could not obtain insurance through the voluntary market. Ind. Code § 27-7-2-28.1(c). The Company was one of five Servicing Carriers licensed in Indiana to provide such coverage. The Indiana Compensation Rating Bureau oversaw the Company as a Servicing Carrier and is a private, nonprofit association of all insurance companies licensed to provide worker's compensation insurance in Indiana—overseeing more than 700 such insurers. *Id*. § 27-7-2-3.

To carry out this statewide system, the Bureau administers the Assigned Risk Plan, which connects Servicing Carriers to eligible employers. *Id*. § 27-7-2-28.1(b) The Bureau assigns Servicing Carriers to issue worker's compensation policies to employers that "are in good faith entitled to but who are unable to procure such insurance through ordinary methods." *Id.* § 27-7-2-28.1(c).

Two contracts govern the relationship between the Bureau and a Servicing Carrier. The first contract is the Servicing Carrier Agreement, which sets out the duties of each Servicing Carrier and of the Bureau. Under this agreement, a Servicing Carrier must issue a worker's compensation policy when the Bureau assigns it. A Servicing Carrier must also defend and litigate covered compensable losses arising from or in connection with its policy. If either the Bureau or a Servicing Carrier breaches the agreement, the nonbreaching party "shall be entitled to recover in addition to all other damages, attorneys' fees, expenses and costs" from the other.

The second contract between the Bureau and a Servicing Carrier is the Quota Share Reinsurance Agreement. This agreement says that any loss a Servicing Carrier incurs from an assigned policy, or any compensatory or consequential damages arising from an assigned policy "shall be deemed to be a Loss reinsurable under this Agreement for which the Servicing Carrier is entitled to reimbursement." If a Servicing Carrier settles a claim in good faith, the settlement is "binding unconditionally" on the Bureau. Thus, if a Servicing Carrier pays a worker's compensation settlement or any compensatory damages concerning a claim, the Bureau must reimburse the Carrier for the full amount of the claim. But the Bureau need not reimburse for losses a Servicing Carrier incurs due to its own "willful misconduct, fraudulent activity or criminal act."

The Assigned Risk Plan, the Servicing Carrier Agreement, and the Quota Share Reinsurance Agreement all contain nearly identical dispute-resolution provisions. A Servicing Carrier with a potential dispute regarding the Assigned Risk Plan must first ask the Bureau to review the claim. If the Bureau denies the claim, the Servicing Carrier may then seek review from the Bureau's Governing Board. If the Governing Board denies the claim, the Servicing Carrier may appeal to the Indiana Department of

Insurance, which must hold a hearing and issue a decision. After the Department issues its decision, a party can then seek judicial review in the Marion Circuit or Superior Court. *Id.* § 27-7-2-27(b).

B

In 2013, the Bureau received an application for worker's compensation insurance from Omega Demolition Corporation, which was performing demolition operations on a bridge that spanned the Ohio River in southern Indiana. The Bureau assigned Omega to the Company, and the Company issued a worker's compensation policy to Omega. After the policy took effect, one of Omega's employees, James McWorthey, was injured while on the job. The employee sued Omega and the Company under the Company's policy. After four years of litigation, in 2017 the Company settled with the employee for $2,050,000. During the litigation, the Company incurred $805,329 in fees and costs.

That same year, the Company submitted a claim to the Bureau for reimbursement of its total outlays during the Omega/McWorthey litigation, amounting to $2,855,329. The Bureau and the Bureau's Governing Board denied the claim, finding that the Company handled the Omega/McWorthey litigation fraudulently. Following the dispute-resolution process outlined in the Reinsurance Agreement, Servicing Carrier Agreement, and the Assigned Risk Plan, the Company appealed to the Department of Insurance. After another four years of litigation, in 2021 an ALJ granted the Company's summary-judgment motion, holding it was entitled "to reimbursement of the amounts it paid in connection with the Omega/McWorthey Claim". The ALJ also ordered the Bureau to "fully reimburse" the Company for its payments made in connection with the Omega/McWorthey litigation.

The ALJ allowed the parties fifteen days after his ruling to preserve any objections for judicial review, according to Indiana Code section 4-21.5-3-29(d). The Bureau did not object within the fifteen days. On the sixteenth day, the Company asked the ALJ to award it prejudgment and post-judgment interest, plus attorneys' fees and expenses incurred on appeal to the Department. The total amount the Company claimed in prejudgment interest was $930,601.77 as of August 5, 2021, plus interest of $625.82 per

day until the judgment was satisfied. This reflects Indiana's statutory interest rate of eight percent. *Id*. § 24-4.6-1-101. The Company also claimed $1,049,388.28 in fees and expenses incurred during the administrative appeal.

Neither the ALJ nor the Department responded to the Company's request. For nearly a year, the Company filed supplemental affidavits and motions with the ALJ requesting fees, interest, and expenses (together, fees). The Company repeatedly asked the insurance commissioner for clarification of the pending motion for fees but received no response. Finally, in 2022, the Bureau tendered a check to the Company for the $2,855,329 it claimed to be owed on the original reimbursement claim. The Bureau said the check was "full and complete payment" of all sums due, without addressing the pending motion for fees in connection with the administrative-review litigation. The Company did not cash the check.

C

The Company instead sought judicial review and an order of mandamus in the Marion Superior Court. It asked the court to order the Department to rule on its pending motions. The Bureau and the Department opposed judicial review, arguing that the ALJ's order for the Bureau to "fully reimburse" the Company included reimbursement for fees incurred during the administrative appeal. Thus, the Department did not "have any further actions to take."

After a hearing, the trial court granted the Company's petition for judicial review. The court found that the Company was entitled to fees incurred during the appeal, and the Department's failure to rule on the Company's motions was an abuse of discretion and was arbitrary, capricious, and contrary to law. The court remanded the case to the Department with instructions to award the Company fees. The Company incurred additional attorneys' fees on judicial review, and post-judgment-interest continued to grow—amounting to over one million dollars in interest as of the Bureau's satisfaction of the judgment and $1,604,216.56 in fees as of the trial court's order granting judicial review.

The Bureau appealed the trial court's order granting judicial review. Our court of appeals reversed in a precedential opinion. *Ind. Comp. Rating Bureau v. Tech. Ins. Co.*, 247 N.E.3d 778 (Ind. Ct. App. 2024). It held that the Company was not seeking reimbursement under the Reinsurance Agreement, but an "equitable apportionment"—a claim governed by statute, I.C. § 27-7-2-9, and not the parties' agreements. *Tech. Ins. Co.*, 247 N.E.3d at 782–83. The court found that the Department had no authority under section 27-7-2-9 to review the Company's claims for fees because those claims were not presented first to the Bureau. *Id.* at 784.

The Company then sought transfer, which we grant today, ___ N.E.3d ____ (Ind. 2026), thus vacating the appellate opinion. Ind. Appellate Rule 58(A).

## II

We affirm the trial court's judgment granting judicial review to the Company. The Company needed to exhaust administrative remedies with the Bureau and the Department of Insurance, and on this record the Company did so. We thus remand to the trial court to calculate and award attorneys' fees, interest, and expenses. The Company need not go back to square one in front of the Bureau and its Governing Board to seek collateral relief in connection with its request for administrative review.

First, we establish that the Company is entitled to prejudgment interest, attorneys' fees, and expenses pending administrative appeal and judicial review. Second, we explain that the Company may seek this relief on judicial review because it properly exhausted its administrative remedies.

## III

The Company is entitled to fees incurred during its administrative appeal before the Department and on judicial review because the Bureau breached its agreements with the Company. The Reinsurance Agreement provides that "any punitive, exemplary, compensatory, or consequential damages . . . , including such reasonable attorneys' fees and other defense costs . . . , shall be deemed to be a Loss reinsurable" to the Servicing Carrier, and the carrier "is entitled to reimbursement." The Bureau must reimburse the Company for all settlements the Company made in

connection with Assigned Risk Policies. "Loss settlements made in good faith by the Servicing Carrier, whether under strict contract conditions or by way of compromise, shall be binding unconditionally upon the [Bureau]."

Here, the Company settled the Omega/McWorthey litigation in good faith for $2,050,000 plus $805,329 in attorneys' fees and costs. Under the controlling documents, the Bureau was required to reimburse the Company once it submitted its claim unless the Company incurred this loss due to willful misconduct or fraud. The Bureau claimed the Company handled the Omega/McWorthey litigation fraudulently, but the ALJ determined this objection to be baseless. Thus, the Bureau, which should have reimbursed the Company, breached the Reinsurance Agreement when it denied the Company's claim.

Because the Bureau breached its agreements with the Company, we must determine whether the Company may recover interest on the judgment in a breach-of-contract action. "Prejudgment interest is allowed to compensate for loss of the use of money where a simple mathematical computation can operate on an amount for which the defendant is found to be liable." *Ind. Dep't of Pub. Welfare v. Chair Lance Serv., Inc.*, 523 N.E.2d 1373, 1379 (Ind. 1988). In a breach-of-contract action, prejudgment interest is appropriate when "the breach did not arise from tortious conduct, the amount of the claim rests on a simple calculation, and the trier of fact does not need to exercise its judgment to assess the amount of damages." *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 757 (Ind. 2018) (footnote omitted).

The Company submitted its reimbursement claim to the Bureau in 2017, but the Bureau did not tender payment until 2022. The claimed amount of $2,855,329 was fixed when the Company submitted the claim in July 2017, and the Bureau has never disputed this amount. Thus, the amount of the claim has been ascertainable from the start, and assessing prejudgment interest rests on a simple calculation. We hold that the Company is entitled to prejudgment interest.

As for attorneys' fees, the general rule in Indiana is that each party pays its own fees. *River Ridge Dev. Auth. v. Outfront Media, LLC*, 146 N.E.3d 906,

912 (Ind. 2020). But there are exceptions to the rule. A fee-shifting statute may govern the dispute. *See, e.g.*, I.C. § 34-52-1-1(b). Or the parties, by contract, may agree that the winner of any dispute between them is entitled to recover its fees from the other. *Reuille v. E.E. Brandenberger Constr., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008). We review questions of contractual interpretation de novo. *Lake Imaging, LLC v. Franciscan All., Inc.*, 182 N.E.3d 203, 206 (Ind. 2022).

The Servicing Carrier Agreement contains a fee-shifting provision that entitles the "prevailing Party" to "attorneys' fees, expenses and costs." Though the agreement does not define "prevailing Party", that omission is no obstacle here. When a contract term is undefined, we will "turn to sources that reflect the ordinary meaning of the term at the time the contract was executed." *Reuille*, 888 N.E.2d at 771. The Servicing Carrier Agreement was executed in 2013. The next year's edition of Black's Law Dictionary defines prevailing party as one "in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Prevailing Party*, Black's Law Dictionary 1298 (10th ed. 2014). This definition follows how our case law defines "prevailing party". *Reuille*, 888 N.E.2d at 771.

We hold that the Company is a prevailing party. The ALJ issued a judgment in the Company's favor when it granted summary judgment on the reimbursement claim. The ALJ held that the Bureau was "unconditionally bound" to accept the Company's reinsurance claim and ordered full reimbursement to the Company. And the ALJ confirmed repeatedly that the Bureau's opposing arguments lacked merit. Even the Bureau agreed at oral argument before us that if the Company's fee claim was proper—an issue we take up later, *infra*, at 13—then the Company is entitled to fees. Thus, the Company is a prevailing party and is entitled to fees under the agreement.

Having determined that the Company is entitled to its fees incurred in connection with the Omega/McWorthey litigation, we address next whether it can recover them.

## IV

Whether the Company is entitled to relief rests on two questions: first, whether the Company had to follow the dispute-resolution provisions set out in the Assigned Risk Plan and agreements, limiting the Company's relief in the trial court to judicial review under the Administrative Orders and Procedures Act; second, assuming the Company is limited to seeking recourse under AOPA, whether the Company properly sought judicial review. The answer to both, we hold, is yes. We address each in turn.

### A

The Company argues that it did not have to exhaust remedies in its claim for fees because the dispute is based in contract. As the Bureau violated the Servicing Carrier and Reinsurance agreements, the Company argues it can bring this breach-of-contract claim to the trial court immediately. Two issues govern this inquiry. The first is whether the Bureau is a "state agency" subject to AOPA. The second is whether, even if the Bureau is not a state agency, the applicable contracts' dispute-resolution procedures nevertheless require exhaustion of administrative remedies and limit the Company's recourse to judicial review. We hold that the Bureau is not a state agency, but that the Company's membership in the Bureau through the Assigned Risk Plan, and its agreements with the Bureau, create an administrative remedy the Company had to fulfill before proceeding to court.

### 1

AOPA governs the procedure for seeking judicial review from the final decisions of administrative agencies. I.C. ch. 4-21.5-5. When it applies, AOPA is the "exclusive means for judicial review" of those agency decisions. I.C. § 4-21.5-5-1. Generally, a party must be aggrieved by a "final agency action" to seek judicial review. *Id.* §§ 4-21.5-5-2(b), -3. An agency action is final, and thus ripe for review, only if the petitioner exhausts its administrative remedies, discussed *infra* at 16. *Matter of R.L.*, 246 N.E.3d 257, 260 (Ind. 2024).

We enforce AOPA's exhaustion requirement strictly. "Premature litigation may be avoided, an adequate record for judicial review may be

compiled, and agencies retain the opportunity and autonomy to correct their own errors." *Turner v. City of Evansville*, 740 N.E.2d 860, 862 (Ind. 2001) (citation omitted). If a party must exhaust administrative remedies under AOPA, but fails to do so, then courts are "completely ousted of subject matter jurisdiction to hear the case at all." *Austin Lakes Joint Venture v. Avon Utils., Inc.*, 648 N.E.2d 641, 644 (Ind. 1995).

The Company argues that AOPA's exhaustion requirement should not apply here. This dispute, it says, is like any other "standard breach of contract action" between two private entities, so the Department could hear and consider the request for fees in the first instance without the Company having to exhaust administrative remedies before the Bureau. It is true that exhaustion of remedies typically is not required in breach-of-contract claims, even where an agency might be involved indirectly. *Id.* at 649–50. Thus, a breach-of-contract claim between private parties is generally not a matter where administrative bodies assume jurisdiction. *Fratus v. Marion Cmty. Schs. Bd. of Trs.*, 749 N.E.2d 40, 46 (Ind. 2001).

The first issue is whether the Bureau is a state agency. If so, then our analysis ends here, and any decision by the Bureau must proceed through AOPA on judicial review. I.C. § 4-21.5-5-1. At first glance, the Bureau is not a state agency but a private, nonprofit, unincorporated association of Indiana's worker's compensation insurers. See *Risk Metrics Corp. v. Ind. Comp. Rating Bureau*, 85 N.E.3d 891, 893 (Ind. Ct. App. 2017). But the Bureau does have agency-like qualities. It is a creature of statute empowered to administer the Assigned Risk Plan with authority to manage and rate worker's compensation insurance in Indiana. I.C. §§ 27-7-2-1.1, -3.1, -28.1.

Though the lines are blurry, we agree the Bureau is not an agency in this case. Even though the Bureau is private, exhaustion may be required when the parties' underlying agreements require pursuing administrative remedies. See *M-Plan, Inc. v. Ind. Comprehensive Health Ins. Ass'n*, 809 N.E.2d 834, 838–39 (Ind. 2004). So we consider next whether the Company had to follow the procedures set out in the applicable agreements and the Assigned Risk Plan before suing in court.

Though the Bureau is a private entity, it has some of the trappings of a state agency, prompting the question of how to treat an entity that is neither fish nor fowl.

This is not the first time we have dealt with an organization like the Bureau. In *M-Plan*, a group of health maintenance organizations, HMOs, sued the Indiana Comprehensive Health Insurance Association. Like the Bureau in a worker's compensation matter, the Association is a private organization, created by statute, that provides health insurance for those who cannot obtain coverage from a private insurer. *M-Plan*, 809 N.E.2d at 835. Just as all worker's compensation insurers in Indiana must be members of the Bureau, all health insurers in Indiana must be members of the Association. *Ibid.* The Association submitted a Plan of Operation to Indiana's insurance commissioner with an internal appeal procedure that members must follow if challenging the Association's actions. *Id.* at 836. Rather than follow the prescribed internal dispute procedures, the HMOs sued directly in court. *Ibid.*

We held that the Association, though private, is "something of a hybrid" with "some characteristics of a state agency." *Id.* at 838. Because our legislature directed the Association to create a plan of operation to fulfill the statute's goals, and the insurance commissioner had to approve it, the plan's "status is essentially the same as an administrative regulation." *Ibid.* Thus, the Association and the Department "provided an administrative remedy pursuant to their statutory authority that the HMOs must pursue." *Id.* at 839. We noted that this process "does not foreclose judicial review." *Ibid.* Rather, any decision by the Department, as a state agency, could be reviewed under AOPA. *Ibid.*

The facts here are strikingly similar. The legislature gave the Bureau broad authority to establish and administer the Assigned Risk Plan with the approval of the insurance commissioner. I.C. § 27-7-2-28.1(b). Once the Bureau created the Assigned Risk Plan, and the commissioner approved it, it became akin to an administrative regulation. *M-Plan*, 809 N.E.2d at 838. Thus, the Bureau provided an administrative remedy that the Company must follow. This provision requires the Company first to seek

review of any dispute by the Bureau, and then by the Bureau's Governing Board, and then by the Department. Under *M-Plan*'s rationale, once the Department rendered a decision on the appeal, the Company's sole avenue for judicial review was through AOPA. *Id.* at 839.

This result makes sense for other reasons as well. First, the Company's status as a member of the Bureau requires exhaustion. "Just as a court will not hear a dispute with an administrative agency before the challenger has exhausted available administrative remedies, so may a dispute between an association and one of its members be subject to exhaustion of internal reviews provided by the association." *Id.* at 838. As a worker's compensation insurer in Indiana, the Company is automatically a member of the Bureau. And, as a member, the Company must follow the required dispute-resolution provisions established in the Assigned Risk Plan. Second, the Company agreed to the same dispute-resolution provision in its agreements with the Bureau, making an even stronger case for exhausting remedies. See *PSI Energy, Inc. v. AMAX, Inc.*, 644 N.E.2d 96, 99–100 (Ind. 1994) (noting Indiana's favor towards valid dispute-resolution and arbitration agreements). For these two reasons, the Company had to exhaust remedies despite the Bureau's status as a private entity.

The Bureau argues that an alternative ground for requiring the Company to exhaust administrative remedies derives not from the parties' contracts but from a separate statute, Indiana Code section 27-7-2-9. This statute requires that "charges and expenses incident to the establishment and operation of the bureau shall be borne equitably . . . among the members". I.C. § 27-7-2-9. And it authorizes relief for a member aggrieved by an inequitable "apportionment of the cost or costs made by the bureau or by failure of the bureau to make such equitable apportionment". *Ibid.* Though this is the basis on which our court of appeals found for the Bureau, we hold that section 27-7-2-9 does not govern this dispute. This statute applies only to the equitable apportionment of the Bureau's operating charges and expenses among its members. It does not apply here to the Company's claim for reimbursement of outlays incurred in defending litigation brought against one of its insureds.

Because of the dispute-resolution provisions, the Company must exhaust administrative remedies prescribed in the Assigned Risk Plan before proceeding to court, and it is limited to judicial review under AOPA after exhausting those remedies with the Department. We address next whether the Company followed AOPA's judicial-review requirements.

B

An aggrieved party faces several procedural hurdles before it may seek judicial review of an agency order or decision. The Bureau makes two arguments that the Company did not properly seek judicial review: first, the Company's petition for judicial review is improper because the Company failed to petition from a "final agency action" of the Department; second, the Company did not properly exhaust its remedies with the Bureau as to claims for fees.

We reject both arguments. The Company properly sought judicial review in the Marion Superior Court. On this record, the Department's failure to act on the Company's pending motions for fees was a final agency action sufficient for judicial review under AOPA. In addition, the Company properly exhausted administrative remedies because it did not need to seek separate review before the Bureau of its post-judgment claims for fees. Those claims were collateral to the Company's substantive claim for reimbursement of its outlays in the Omega/McWorthey litigation. The Company's collateral claims did not arise until it obtained a final judgment on the underlying reimbursement claim. Thus, the forum that awarded relief on the substantive claim—the Department—was a proper forum in which to seek (and obtain) relief on the collateral claims.

1

First, we consider the Bureau's argument that judicial review was improper because the Company did not seek review from a final agency action. Thus, the Bureau maintains, the Company lacked standing under AOPA.

An aggrieved party has standing to seek judicial review from a "final agency action". See *id.* § 4-21.5-5-3. A final agency action is either "the entry of an order designated as a final order" or "any other agency action

that disposes of all issues in a proceeding for all parties after the exhaustion of all available administrative remedies concerning the action." *Id*. § 4-21.5-1-6. AOPA defines "agency action" as including the "whole or a part of an order", the "failure to issue an order", or an "agency's performance of, or failure to perform, any other duty, function, or activity under [AOPA]". *Id*. § 4-21.5-1-4. If agency action (or inaction) prejudices a party and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law", a trial court on judicial review may "compel agency action that has been unreasonably delayed or unlawfully withheld." *Id*. §§ 4-21.5-5-14(d)(1), -15(2).

We start with whether there was a "final agency action" sufficient for the Company to seek judicial review under AOPA. The Bureau makes two arguments that the agency action here does not allow the Company to seek judicial review. First, the Bureau says the ALJ implicitly denied the Company's request for fees when it ordered the Bureau "to fully reimburse [the Company] for its payments made in connection [with] the Omega McWorthey litigation." The Bureau argues this was a final agency action, but the Company did not timely seek review within thirty days of the ALJ's order. See *id*. § 4-21.5-5-5. We disagree with the Bureau. Nothing suggests that the ALJ considered or denied the Company's request for fees when it ordered summary judgment for the Company. The ALJ's detailed decisions, rather, discussed only the merits of the appeal—whether the Bureau must reimburse the Company's underlying Omega/McWorthey litigation expenses.

Second, the Bureau argues that if the ALJ did not dispose of the Company's request at summary judgment and the Department did not respond to its requests for a ruling, then no final agency action exists from which the Company could seek review. Essentially, the Bureau asks us to reward the Department's silence in the face of the Company's repeated requests for a ruling on fees by foreclosing the Company's attempt for judicial relief. This argument fails. Inaction can qualify as "agency action" under AOPA. For example, if an agency fails to "carry out an obligation" it agreed to, it has failed to perform a "duty, function, or activity", which is an "agency action" under AOPA. *Ind. Dep't of Env't Mgmt. v. Raybestos Prods. Co.*, 897 N.E.2d 469, 474 (Ind. 2008), corrected on reh'g on other

grounds by 903 N.E.2d 471 (Ind. 2009). Furthermore, if an agency "fail[s] to issue an order", this too is an "agency action" under AOPA. I.C. § 4-21.5-1-4(2). And an agency action becomes a "final agency action" under AOPA when it "disposes of all issues in a proceeding". *Id.* § 4-21.5-1-6(2).

The Department failed to issue an order regarding the Company's repeated requests and motions for fees. Under the Assigned Risk Plan, which the insurance commissioner approved, the Department must "schedule and hold a hearing on the appeal" and "render a decision on the appeal." After the Company won on the merits of its reimbursement claim, it sought a ruling on its motions for fees at least eight times within one year. The Department never responded to these requests and never notified the Company that it would not respond. Not until the Company petitioned for judicial review did the Department suggest that it found the matter to be closed and never intended to respond to the Company's requests. The Department's somnolence here disposed of all pending issues between the Company, the Bureau, and the Department. The Department's functional denial of the Company's order—its "failure to issue an order"—left no pending matters between the Company and the Bureau, *id.* § 4-21.5-1-4(2), and was a final agency action sufficient for judicial review.

Our conclusion that the Department's silence was a final agency action is highly fact sensitive. An agency's mere delay in issuing an order will not ordinarily constitute a final agency action. But the Department's repeated failures to respond to the Company is precisely the type of "failure to issue an order" that an aggrieved party can seek to remedy immediately through judicial review. We hold that the Department's inaction was a "final agency action" entitling the Company to seek relief on judicial review.

2

AOPA also requires the aggrieved party to exhaust administrative remedies and timely seek judicial review. *Id.* §§ 4-21.5-5-4, -5; *Matter of R.L.,* 246 N.E.3d at 260.

To begin, we find that the Company timely sought judicial review. Under AOPA, a petition is timely "only if it is filed within thirty (30) days after the date that notice of the agency action that is the subject of the petition for judicial review was served." I.C. § 4-21.5-5-5. As the basis for review here was the Department's inaction, the thirty-day time limit for seeking judicial review did not begin until the Department served the Company with notice that it refused to act on the Company's motions. Here, the Department did not serve the Company with notice or take any other affirmative step to notify the Company of the Department's intentions until after the Company sought judicial review. Because the thirty-day time limit had not yet started, the Company's petition for judicial review was timely.

The only remaining issue, then, is whether the Company properly exhausted administrative remedies. No one disputes that the Company properly exhausted administrative remedies on its underlying claim for reimbursement. The question is whether the Company also had to exhaust administrative remedies on its separate claim for fees before the Bureau before seeking that relief from the Department.

In civil litigation, fee claims are generally collateral to the merits of the underlying claims for relief. See *Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*, 571 U.S. 177, 185–86 (2014) (holding that issues of attorneys' fees and costs are collateral to a merits judgment's becoming final for appeal purposes). In other words, a party requests fees only after prevailing and having judgment entered in its favor. Indeed, a "request for attorneys' fees almost by definition is not ripe for consideration until after the main event reaches an end. Entertaining such petitions post-judgment is virtually the norm." *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 460 (Ind. 2012).

Prejudgment interest also is collateral to a claim's merits. It compensates the prevailing party for the time value of money lost while litigation is pending. *Song v. Iatarola*, 76 N.E.3d 926, 939 (Ind. Ct. App. 2017). It is calculated from the date the party demanded the money owed to the date the court enters judgment for that party. *Ibid.* To calculate the amount owed for such interest, the court must know the amount of the judgment

and how long the adverse party withheld the money sought. As with fees, "it seems to make practical sense to pursue prejudgment interest by means of a post-trial motion." *R.K.W. Homes, Inc. v. Hutchison*, 198 N.E.3d 405, 412 (Ind. Ct. App. 2022).

Here, the parties themselves contemplated that the issue of fees would not arise until one party prevailed on the merits. The Servicing Carrier Agreement contains a fee-shifting provision awarding "attorneys' fees, expenses and costs" to the "prevailing Party". The term "prevailing Party" presupposes that one of the parties must first prevail and have judgment entered in its favor. Relevant here, the Company did not become a prevailing party—and thus was not entitled to fees—until the ALJ granted its motion for summary judgment. Its "right to recover attorney fees", in other words, "did not become ripe until after the judgment." *Id.* at 411.

In addition to the parties' own agreements, there are sound policy reasons for allowing the Company to seek fees from the Department without having first presented these collateral claims to the Bureau. The point of an exhaustion-of-remedies requirement, after all, is to allow parties and courts "the benefit of [the agency's] experience and expertise". *Matter of R.L.*, 246 N.E.3d at 261 (alteration in original) (quoting *Advantage Home Health Care, Inc. v. Ind. State Dep't of Health*, 829 N.E.2d 499, 503 (Ind. 2005)). Exhaustion of remedies also prevents premature litigation, compiles an adequate record for judicial review, and gives the agency autonomy to correct its own errors. *Ibid.* And it "avoid[s] collateral, dilatory action[s]" and "ensure[s] the efficient, uninterrupted progression of administrative proceedings and the effective application of judicial review." *Austin Lakes*, 648 N.E.2d at 644 (quoting *Uniroyal, Inc. v. Marshall*, 579 F.2d 1060, 1064 (7th Cir. 1978)).

Requiring the Company to present its interest and fee claims to the Bureau first would advance none of these policy goals. The Bureau has no special expertise regarding such awards. There was no need for the Bureau to prepare an adequate factual record, as these claims are collateral to the case's underlying merits. And, most importantly, requiring the Company to go back to the Bureau to exhaust its claims for fees would be the quintessence of a "collateral, dilatory action". *Ibid.* (quoting *Uniroyal*, 579

F.2d at 1064). The Company litigated its reimbursement claim in front of the Bureau and the Department for nearly five years. Now that the Company has prevailed on the merits, the Bureau wants the Company to restart this cycle to recover the fees that everyone now agrees it can recoup. When the outcome is foreordained, there is nothing to be gained by insisting on a pointless process.

That leaves the question of the proper remedy. Though, as the separate opinion notes, the Company sought an order compelling the Department to award fees, *post*, at 2, the Department is not the only forum that may do so. AOPA authorizes trial courts to "compel agency action that has been unreasonably delayed or unlawfully withheld." I.C. § 4-21.5-5-15(2). We have held this statute "authorizes a court to enter an affirmative order" compelling repayment. *Chair Lance*, 523 N.E.2d at 1379. Given the Department's inaction in responding to the Company's motions for fees for almost a year, we hold that the Department unlawfully withheld its order on fees. Thus, we remand this case to the trial court to calculate and award repayment. App. R. 66(C)(10).

\* \* \*

For these reasons, we affirm the trial court's judgment for the Company with one modification. We remand to the trial court—not the Department—with instructions to award prejudgment interest and reasonable attorneys' fees and expenses the Company incurred during administrative review and judicial review, including the fees and expenses it incurred litigating this appeal. And we direct that further proceedings in this matter be conducted with all deliberate speed.

Massa, Goff, and Molter, JJ., concur.

Rush, C.J., concurs in part and dissents in part with separate opinion.

ATTORNEY FOR APPELLANT INDIANA COMPENSATION RATING BUREAU

E. Scott Treadway
EST LAW, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE TECHNOLOGY INSURANCE COMPANY

Maggie L. Smith
FBT Gibbons LLP
Indianapolis, Indiana

Linda L. Pence
Suzannah Wilson Overholt
Amundsen Davis LLC
Indianapolis, Indiana

**Rush, C.J., concurring in part and dissenting in part.**

I agree with the Court that Technology Insurance Company is entitled to prejudgment interest, attorney fees, and expenses (collectively "fees") and that Technology had to exhaust its administrative remedies through the Bureau before appealing to the Department. *Ante*, at 6–13. I also agree that, on the particular facts of this case, the Department's failure to act on Technology's motions was judicially reviewable as a final agency action. *Id.* at 13–16. And I agree that Technology, having prevailed on its substantive claim, need not return to the Bureau to exhaust its requests for fees. *Id.* at 16–18. But in addition to the reasons the Court gives, I conclude that Technology need not do so because the proceedings before the Department were de novo under the Administrative Orders and Procedures Act (AOPA). And I part ways with the Court on the appropriate remedy. In my view, we should remand to the Department, not the trial court, to calculate and award fees. *See id.* at 18. Ultimately, I concur in Part III and also in Part IV, except that I respectfully dissent from that section's decision to remand the case to the trial court.[1]

## I. Technology need not exhaust its requests for fees before the Bureau because the proceedings before the Department were de novo.

The Court concludes that Technology need not exhaust its requests for fees for two reasons: (1) those requests ripened only once Technology prevailed at the Department; and (2) exhausting those requests before the Bureau would advance no policy goals. *Ante*, at 16–18. While I agree with the Court's reasoning, I find another reason more compelling.

Technology need not exhaust its requests before the Bureau because, under AOPA, the proceedings before the Department were de novo. The

---

[1] I also find the Bureau's res judicata argument, not discussed by the Court, unpersuasive. Technology's counterclaim for fees was not dismissed with prejudice in cause number 49D12-2110-PL-34039.

Plan of Operation—incorporated by reference into other agreements—required the Department to "hold a hearing on [a Servicing Carrier's] appeal" from a decision of the Bureau "consistent with" AOPA. And AOPA provides for ALJs to conduct administrative proceedings before an agency—like the Department—and specifies that those proceedings "are de novo." Ind. Code § 4-21.5-3-14(d). "De novo" means the proceedings before an ALJ constitute a new beginning as if there had never been a decision in any lower forum. *Cf. Taylor v. State*, 120 N.E.3d 635, 638–39 (Ind. Ct. App. 2019) (explaining that a trial de novo is not an appeal but a fresh start for the entire case). And so, because the ALJ conducts the proceedings de novo, there is no basis for the ALJ to decide only some of the issues and then remand the remaining issues to a previous administrative forum.

In short, because the proceedings before the Department were de novo and the fees Technology seeks are collateral to its substantive claim, Technology need not return to the Bureau to request those fees.

## II. We should remand to the Department to calculate and award fees.

The Court ultimately affirms the trial court's judgment in Technology's favor "with one modification." *Ante*, at 18. Whereas the trial court ordered the Department to award fees, the Court instead directs the trial court to do so. *Id.* This remedy conflicts not only with the relief that Technology sought—an order compelling the Department to act on its fee requests—but also the relief that AOPA provides in these circumstances. *See* I.C. § 4-21.5-5-15(2) (allowing a court to "compel agency action that has been unreasonably delayed or unlawfully withheld"). And these circumstances are distinct from those in the case cited by the Court, where the trial court compelled an agency to pay money it owed to the petitioner. *Ante*, at 18 (citing *Ind. Dep't of Pub. Welfare v. Chair Lance Serv., Inc.*, 523 N.E.2d 1373, 1379 (Ind. 1988)). Here, the withheld action was the Department's failure to rule, not its failure to pay money. We should therefore simply affirm the trial court's judgment and remand to the Department to calculate and award fees.

For these reasons, I concur in Part III and also in Part IV, except that I respectfully dissent from that section's decision to remand the case to the trial court.